1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   OSCAR DIAZ, *et al*.                    Case No. 1:22-cv-00246-CDB[1]

12              Plaintiffs,                   ORDER GRANTING PLAINTIFFS' MOTION
                                              FOR PRELIMINARY APPROVAL OF CLASS
13        v.                                  AND REPRESENTATIVE ACTION
                                              SETTLEMENT
14   UNITED PARCEL SERVICE, INC., *et al*.
                                              (Doc. 21)
15              Defendants.

16

17

18        Before this Court is Plaintiffs Oscar Diaz and Jace B. O'Guinn's (hereinafter collectively

19   as "Plaintiffs") motion for preliminary approval of class and representative action settlement.

20   (Doc. 21).  The motion is unopposed.  For the reasons explained herein, Plaintiffs' motion for

21   preliminary approval of class and representative action settlement shall be granted.

22   **Background**

23        Defendant United Parcel Service, Inc. ("Defendant"), an Ohio Corporation, provides

24   packaging and shipping services worldwide.  Plaintiff Oscar Diaz was employed by Defendant

25   from, July 28, 1995, to present and has served as a Part-Time Operations Supervisor/Part-Time

26

27        [1] The parties have consented to the jurisdiction of the United States Magistrate Judge and
     this action has been assigned to Magistrate Judge Christopher D. Baker for all purposes.  (Docs.
28   23-25).

1   Local Sort Supervisor ("PTS") since 2000.  (Doc. 21-5 at ¶ 3).  Plaintiff Jace O' Guinn was

2   employed by Defendant from July 2019 to December 2021 and served as a PTS.  (Doc. 21-6 at ¶

3   3).  Plaintiffs' job responsibilities included unloading and sorting packages and facilitating the

4   unloading and sorting of packages from trucks.  (Docs. 21-5 at ¶ 3, 21-6 at ¶ 3).

5        Under Defendant's policy, PTS employees are expected to work 5.5 hours per day and are

6   paid weekly.  PTS employees are guaranteed 27.5 hours of pay per week.  (Doc. 21-2 at ¶ 4).

7   However, Plaintiffs allege PTS employees regularly work in excess of 5.5 hours per day and 27.5

8   hours per week, especially during Defendant's "peak season", typically during the holiday season.

9   *Id*.

10       At some point, Defendant established and promulgated a paid vacation policy applicable

11  to PTS employees like Plaintiffs.  (Doc. 10 at 23-29).  Under this policy, "the number of vacation

12  hours that a part-time hourly paid employee receives for each vacation day is based on the

13  employee's average straight-time daily paid hours for the prior Vacation Year."  (Doc. 21-2 at ¶

14  5).  Plaintiffs and the proposed class members allege that Defendant did not follow its written

15  vacation policy, and instead paid PTS employees vacation pay of only 27.5 hours of pay for each

16  regardless of how much they actually worked on average."  (Doc. 21-2 at ¶ 6).

17       Based on this allegation, on February 25, 2022, Plaintiffs filed a class action complaint

18  against Defendants.  (Doc. 1).  On April 19, 2022, Plaintiffs filed a first amended complaint.

19  (Doc. 5).  On April 20, 2022, Plaintiffs filed a notice with the Labor and Workforce Development

20  Agency ("LWDA") of their intent to file a representative civil action by an aggrieved employee

21  pursuant to subdivisions (a) and (f) of California Labor Code § 2699.3.  (Doc. 10 at ¶ 14).  The

22  LWDA did not assume jurisdiction over the applicable penalty claims alleged.  *Id*.  On June 27,

23  2022, Plaintiffs filed a second amended complaint to add a cause of action under the Private

24  Attorneys General Act ("PAGA").  (Doc. 10).

25       At some point, the parties engaged in informal discovery.  (Doc. 21-1 at ¶ 8).  Counsel for

26  Plaintiffs reviewed Defendant's policies and Plaintiffs' employment records.  *Id*.  Plaintiffs'

27  expert analyzed a 10% class sample of time and payroll records and prepared a damages model.

28  *Id*.  On August 15, 2022, the parties filed a stipulation to stay the case pending mediation.  (Doc.

13).  The following day, the Court issued an order granting the stipulation to stay the case for the parties to complete mediation.  (Doc. 13).

On January 18, 2023, the parties engaged in mediation with the assistance of mediator David A. Rotman, Esq.  (Doc. 21-2 at ¶ 10).  After the mediation session, the parties reached a settlement in principle and executed a Memorandum of Understanding.  *Id*.  After additional weeks of arms-length negotiations, the parties finalized the terms of the settlement agreement.  *Id*.  On March 6, 2023, Plaintiffs filed this instant unopposed motion for preliminary approval of class and representative action settlement.  (Doc. 21).

**Plaintiffs and the Proposed Class's Claims and Damages**

According to the allegations of the operative Second Amended Complaint, Plaintiffs brought this action for (1) breach of contract/vacation pay policy, (2) promissory estoppel, (3) failure to pay accrued vacation pay/upon termination/waiting time penalties, (4) failure to furnish timely and accurate wage statements, (5) violation of California's Unfair Competition Law ("UCL"), BUS. & PROF. CODE § 17200 et seq., and (6) violation of PAGA, Labor Code § 2699, et seq.  (Doc. 10 at 1, 12-20).

Plaintiffs argue Defendant's potential liability for the proposed class's direct unpaid vacation wages is $2,434,639.95.  (Doc. 21-2 at ¶ 11).  Plaintiff asserts Defendant's exposure for wage statement penalties is $1,204,484.45.  *Id*.  Plaintiff also argues Defendant's "maximum potential exposure" for waiting time penalties is $13,128,751, "before accounting for [Defendant's] defenses.  *Id*.  Additionally, Plaintiff estimates Defendant's total exposure for PAGA penalties is $4,212,103.35.  *Id*. at ¶ 15.

**The Proposed Settlement**

A. The Class

Pursuant to the unopposed motion for preliminary approval of class and representative action settlement, the parties agree to a gross settlement amount of $1,375,000.00 for the class defined as follows:

> All current and former Part-Time Supervisors, including employees with similar job titles and/or duties, who worked for Defendant within the State of California during the Settlement Class Period, defined as from April 19, 2018, and through the date of the Preliminary Settlement Approval, and who at least once during the Settlement Class

Period took paid vacation under UPS's vacation policy, and whose average straight-time daily paid hours exceeded 5.5 hours per day for the prior Vacation Year, but whose vacation pay was limited to 5.5 hours per day, or 27.5 hours per week of vacation in the Vacation Year.

(Doc. 21-2 at 4, 17).  The parties state the Settlement Class does not include any person who submits a timely and valid opt-out request.  (Doc. 21-1 at 9).

    B. PAGA Settlement Members

        The Settlement Agreement defines the PAGA Settlement Members like the class.  *See Id*. at ¶ 29.  Twenty-five percent of the civil PAGA penalties will be paid to the PAGA Settlement Members as described below.  (Doc. 21-1 at 13).  The PAGA Settlement Class Period means the time period from April 20, 2021, to the date of the Preliminary Settlement Approval.  (Doc. 21-2 at 49).

    C. Payment Terms

        a. Gross Settlement Amount

        The gross settlement fund will cover payments to class members with additional compensation to Plaintiffs as the class representatives.  (Doc. 21-1 at 9, 15).  In addition, the Settlement provides for payments to Class Counsel for attorney's fees and expenses, to the proposed Settlement Administrator, and the LWDA.  *Id*. at 9-15.  Specifically, the Settlement provides for the following payments from the gross settlement amount:

        1.  Class Representatives (Plaintiffs)

        The parties agree, subject to Court approval, to pay up to $6,500 from the Gross Settlement Amount to each Plaintiff for their service as Class Representatives.  *Id*. at 15.  Any portion of this award not awarded to the Plaintiffs shall be part of the Net Settlement Amount, to be disturbed to Settlement Class Members.  *Id*.

        2.    Class Counsel

        The parties agree, subject to Court approval, to pay up to $458,333.33, or one-third of the Settlement Amount, may be allocated to pay attorney's fees, and up to $30,000.00 may be allocated to reimburse Class Counsel for litigation costs.  *Id*. at 12.  Class Counsel notes they intend to file a motion for attorney fees pursuant to *In re Mercury Interactive Corp. Securities*

4

1    *Litigation*, 618 F.3d 988, 993 (9th Cir. 2010), and any portion of the requested attorney's fees and

2    costs not awarded to Class Counsel shall be part of the net settlement amount.  *Id*. at 12-13.

3           3.  LWDA

4           The parties agree, subject to Court approval, to allocate $68,750 (or 5%) of the Gross

5    Settlement Amount under the PAGA.  $51,562.50 (or 75%) of this amount will be paid to the

6    LWDA, and $17,187.50 (or 25%) to PAGA Settlement Members.  *Id*. at 13.

7           4.  Settlement Administrator

8           The parties selected Simpluris, Inc. as the Settlement Administrator in this action.  *Id*. at

9    14.  The parties estimate, subject to Court approval, that $38,400 will be deducted from the Gross

10   Settlement Agreement for Simpluris's administration of the settlement.  (Doc. 21-4 at ¶ 13).

11          b. Net Settlement Amount

12          After the aforementioned payments, the Net Settlement Amount, estimated to be

13   $783,704.17, minus the employer's share of payroll taxes applicable to the portion of the

14   settlement payment attributable to the wages shall be paid out to the Settlement Class.  (Doc. 21-1

15   at 9-10).

16          75% of the Net Settlement Amount will be distributed to Class Members who are also

17   "members of the Waiting Time Penalties Subclass based on the number of workweeks they

18   worked at any time from and after April 19, 2019, through preliminary approval, in proportion to

19   the aggregate number of workweeks worked by all members of the Waiting Time Penalties

20   Subclass."  *Id*. at 10.  Counsel for Plaintiffs estimate this subclass encompasses up to 3,286

21   former employees during the relevant time period.  (Doc. 21-2 at ¶ 11).  Class Members who do

22   not opt out of the Settlement will receive Individual Settlement Payments from the Net Settlement

23   Amount, with each Individual Settlement Amount determined by that class members' share of

24   Waiting Time Penalties for members of the Waiting Time Penalties Sub-Class.  (Doc. 21-1 at 10).

25          The remaining 25% of the Net Settlement Amount will be distributed to Participating

26   Class Members on a pro-rata basis based upon the number of workweeks during which the

27   employee worked in proportion to the aggregate number of workweeks by all Settlement Class

28   Members as follows:

5

| | | | | |
|---|---|---|---|---|
| Workweeks Worked by Class Members | X | Net Settlement | = | Class Member's |
| Total Workweeks Worked by all | | Amount | | Payment |
| Class Members | | | | |

*Id.*  Plaintiffs note this is a non-reversion cash Settlement and Class Members need not submit a claim form to receive a payment.  *Id.*  Class Members who do not opt out of the Settlement will release Defendant from all claims that relate to the causes of action asserted in this action – or those that could have been asserted in this action based on the facts alleged by Plaintiffs' operative Complaint.  (Docs. 10, 21-1 at 10).

Settlement checks will be valid and negotiable for 180 calendar days.  (Doc. 21-1 at 10).  After that time, the Parties propose that the funds represented by uncashed checks be tendered to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Civil Code § 1500 et seq., for the benefit of those Class Members who did not cash their checks, until such time that they claim their property, in compliance with Code of Civil Procedure section 384(b), and subject to the Court's approval.  *Id.*  Plaintiffs state "*In no event will any of the funds revert to Defendant.*"  *Id.* (emphasis in original).

   D.  The Release of Claims

The Settlement Agreement defines the Released Parties as "Defendant, [it's] past and present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys."  (Doc. 21-2 at 22).  The Settlement Agreement provides Plaintiffs shall:

> release the Released Parties from all for the Released Claims during the Settlement Class Period and PAGA Released Claims during the PAGA Period.  Plaintiffs, for themselves and their heirs, successors and assigns, further waive, release, acquit and forever discharge the Released Parties from any and all claims, actions, charges, complaints, grievances and causes of action, of whatever nature, whether known or unknown, which exist or may exist on behalf of Plaintiffs as of the date of this Agreement, including, but not limited to, any and all tort claims, contract claims, wage claims, wrongful termination claims, disability claims, benefits claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, quantum merit claims, and any and all claims arising under any

6

federal state or other governmental statute, law, regulation or ordinance, including, but not limited to, claims for violation of the Fair Labor Standards Act (FLSA), the California Labor Code, the Wage Orders of California's Industrial Welfare Commission, other state wage and hour laws, the American Disabilities Act, the Age Discrimination in Employment Act (ADEA), the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act, California's Whistleblower Protection Act, California Business & Professions Code §§ 17200 et seq., and any and all claims arising under any federal state or other governmental statute, law, regulation or ordinance.

*Id.* at 27-28.  Plaintiffs' release includes a waiver of all rights under California Civil Code § 1542. *Id.* at 28.  Plaintiff agrees "to fully, finally and forever settle and release any and all claims against the Released Parties, known or unknown, suspected or unsuspected, which exist or may exist on behalf of or against the other at the time of execution of this Agreement, including, but not limited to, any and all claims relating to or arising from Plaintiffs' employment with Defendant." *Id.*

E. Objections and Opt-Out Procedure

The parties agreed class members would not be required to take any action to receive their settlement shares.  (Doc. 21-1 at 9).  However, any class member who wishes may file objections or elect not to participate in the settlement.  (Doc, 21-2 at 32-32).  The proposed notice for class members explains the procedures to object and/or request exclusion from the class.  *Id.* 48-55.

**<u>Preliminary Approval of a Class Settlement</u>**

When parties settle an action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

7

1   I.   <u>Conditional Certification of a Settlement Class</u>

2        Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which

3   provides that "[o]ne or more members of a class may sue or be sued as representative parties on

4   behalf of all." Fed. R. Civ. P. 23(a). Parties seeking class certification bear the burden of

5   demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively

6   demonstrate…compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

7   (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an

8   action meets the prerequisites of Rule 23(a), the Court must consider whether the class is

9   maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v.*

10  *Charter Communs., LLC.*, 591 F.3d 1261, 1266 (9th Cir. 2010). However, courts need not

11  consider Rule 23(b)(3) issues regarding the manageability of the class action, as settlement

12  obviates the need for a manageable trial. *See Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL

13  109194, * 12 (S.D. Cal. 2014) ("[B]ecause this certification of the Class is in connection with the

14  Settlement rather than litigation, the Court need not address any issues of manageability that may

15  be presented by certification of the class proposed in the Settlement Agreement.").

16  A.   Rule 23(a) Requirements

17       The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly

18  encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v.*

19  *Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

20       (1) the class is so numerous that joinder of all members is impracticable; (2) there are
         questions of law or fact common to the class; (3) the claims or defenses of the
21       representative parties are typical of the claims or defenses of the class; and (4) the
         representative parties will fairly and adequately protect the interests of the class.

22

23  Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality,

24  typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

25       1. Numerosity

26       This prerequisite requires the Court to consider "specific facts of each case and imposes

27  no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although

28  there is not a specific threshold, joining more than one hundred plaintiffs is impracticable. *See*

8

1    *Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th

2    Cir. 2002) (finding the requirement "satisfied solely on the basis of the number of ascertained

3    class members"); *Gay v. Waiters' & Diary Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir.

4    1977) (a proposed class with 110 members "clearly [included] a sufficient number to meet the

5    numerosity requirements"). Here, Plaintiffs state "the Class is composed of approximately 6,495

6    individuals, who can be identified and located from [Defendant's] personnel and payroll records."

7    (Doc. 21-1 at 17). Therefore, joinder of all identified as plaintiffs is impracticable, and the

8    numerosity requirement is satisfied.

9        2. Commonality

10       Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P.

11   23(a)(2). To satisfy the commonality requirement, the plaintiff must demonstrate common points

12   of facts and law. *Wal-Mart Stores*, 564 U.S. at 350. Thus, "commonality requires that the class

13   members' claim depend upon a common contention such that determination of its truth or falsity

14   will resolve an issue that is central to the validity of each claim in one stroke," and the "plaintiff

15   must demonstrate the capacity of [class-wide] proceedings to generate common answers to

16   common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v.*

17   *Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks, citations

18   omitted).

19       This case involves common class-wide issues that are apt to drive the resolution of

20   Plaintiffs' claims. Plaintiff asserts these common questions include:

21       (1) whether or not Class Members were subject to Defendant's vacation policy, (2)
         whether or not Class Members were paid vacation wages under Defendant's vacation
22       policy, (3) whether or not Class Members were provided with all vacation wages due and
         owing upon separation under Labor Code section 203, (4) whether or not Class Members
23       were provided with accurate wage statements as required by Labor Code section 226, and
         (5) whether or not Defendant engaged in unfair business practices in violation of the UCL
24

25   (Doc. 21-1 at 18). It appears that Plaintiffs' "common questions" are premised on policies that

26   applied to all class members equally, given that all class members were (at one point during the

27   class period) employees of Defendant.

28

The Court notes commonality is not established for the Second Amended Complaint's third cause of action, failure to pay accrued vacation pay upon termination/waiting time penalties. (Doc. 10 at ¶¶ 53-60); *See* Cal. Lab. Code §§ 201-203 (establishing sanction of up to 30 days' wages for employers who "willfully fail to pay" full amounts due at separation).  This cause of action can only be asserted by an estimated 3,286 former employees during the relevant time period.  (Doc. 21-2 at ¶ 11).  Therefore, it is not common to all 6,495 individuals identified for the proposed class.  (Doc. 21-1 at 17).  While this might pose certain fairness problems in terms of approving the settlement, it does not destroy commonality because many other common questions apply to the full class.  *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) ("Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2).") (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011)).

Because of the common questions identified form the basis of the proposed 6,495 individual class members' claims, Plaintiffs satisfy the commonality requirement.  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165-66 (9th Cir. 2014).  "Even if individual members of the class will be entitled to different amounts of damages… 'the presence of individual damages cannot, by itself, defeat class certification.'"  *Mejia v. Walgreen Co.*, No. 2:19-cv-00218 WBS AC, 2020 WL 6887749, at *4 (E.D. Cal. Nov. 24, 2020).  Accordingly, these common questions satisfy Rule 23(a)'s commonality requirement.

3. Typicality

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose of the relief sought."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).  To demonstrate typicality, a plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class

members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted).

Here, the claims of the named Plaintiffs are typical of the claims of the class. Plaintiffs, like the class members, were employees of Defendant, held the same position as the proposed class, and were subject to Defendant's vacation policy like the other class members. (Docs. 21-5, 21-6). The claims of Plaintiffs and the class members arise from the same factual basis and are based on the same legal theories. If Plaintiffs were not serving as class representatives, they would qualify as members of the class. Further, named Plaintiff O'Guinn separated from employment with Defendant in 2021. Doc. 21-6 at ¶ 3). Thus, Plaintiff O'Guinn's claims are substantially identical to those within the Waiting Time Penalties Subclass. The Court is not aware of any facts that would subject the class representatives "to unique defenses which would threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Therefore, typicality has been met.

4. Adequacy of Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *see Ellis*, 657 F.3d at 985 ("The named Plaintiffs must fairly and adequately protect the interests of the class.") (citing Fed. R. Civ. P. 23(a)(4)). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Plaintiffs Diaz and O'Guinn seek appointment as the class representatives for the settlement class. Plaintiffs claim they were injured by Defendant's vacation policy and chose to contact a lawyer to address these purported injuries. Plaintiffs purport they do not possess any conflict of interest with any other class member. *Id*. The parties have not identified any conflict between Plaintiffs and the settlement class, and a review of the record before the Court does not reveal any conflict.

1      As previously discussed, the Settlement Agreement proposes to pay up to $6,500 to each

2  of the two Plaintiffs (a total of $13,000) from the Gross Settlement Amount for their service as

3  Class Representatives.  (Doc. 21-1 at 15).  This award would amount to just under 1% of the

4  gross settlement amount of $1,375,000.  *Compare Ontiveros v. Zamora*, 303 F.R.D. 356, 365

5  (E.D. Cal. 2014) (incentive awards equaling even 1% of a gross settlement are "unusually high")

6  *with Morales v. Stevco, Inc.,* No. 1:09–cv–00704 AWI JLT, 2012 WL 1790371, at *19 (E.D. Cal.

7  May 16, 2012) (total incentive payment of $7,500 did not exceed .81% of total settlement). The

8  award for each Plaintiff is over 37 times larger than the average $175 recovery expected for the

9  Waiting Time Penalties Subclass and over 216 times larger than the average $30 recovery

10  expected for all unnamed class members.  *See McDonald v. CP OPCO, LLC,* No. 17-cv-04915-

11  HSG, 2019 WL 2088421, at *8 (N.D. Cal. May 13, 2019) (finding $15,000 incentive award

12  outsized at 7.5 times the recovery of average class member, and instead awarding $10,000

13  incentive award).

14      Plaintiffs assert that they invested a significant amount of time and effort into this lawsuit

15  from its inception to the proposed settlement.  (Docs. 21-5, 21-6).  Specifically, Plaintiffs claim

16  they spent hours searching for and providing documents to their attorneys and a lot of time

17  answering their attorneys' questions.  *Id.*  Plaintiffs note they had to be on standby for a full day

18  during the mediation of this action.  *Id.*  Plaintiffs assert they assumed a lot of risk suing their

19  current/former employer and had to balance full-time jobs and other responsibilities with their

20  responsibility to this case.  *Id.*

21      The Court finds for the purpose of preliminary approval of this action, the proposed

22  incentive award is not so disproportionate that it necessarily creates a conflict of interest and

23  renders Plaintiffs as inadequate representatives.  However, if Plaintiffs should ultimately seek

24  such an award, they will be required to provide additional evidence and argument, to ensure that

25  their additional compensation requested above other class members is justified.  Accordingly, the

26  Court will retain jurisdiction to award less than the requested $13,000 at the final approval stage

27  if it finds that such an award is not warranted by Plaintiffs' future pleadings.

28

1       As to the second aspect of the adequacy inquiry, David R. Markham of the Markham Law

2   Firm and Walter L. Haines of United Employees Law Group, PC seek appointment as class

3   counsel.  (Docs. 21-2, 21-3).  Both attorneys have extensive experience in prosecuting wage and

4   hour class actions.  *Id.*  Further, the attorneys contend this settlement agreement is the result of

5   vigorous and competent representation, and that they possess no conflicts of interest with the

6   proposed class, class representatives or Defendant.  *Id.*

7       The attorney's described litigation experience and work on this case supports a conclusion

8   that counsel can serve as adequate representatives of the proposed class.  Additionally, Defendant

9   has not opposed the appointment of the proposed class counsels, or asserted the attorneys are

10  inadequate to represent the interests of the class for purposes of the pending settlement.  (Doc.

11  21).  Therefore, the Court finds David R. Markham and Walter L. Haines meet the adequacy

12  requirement to serve as class counsels.

13      B.  Certification of a Class under Rule 23(b)(3)

14      Once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is

15  maintainable under one of the three alternatives identified under Rule 23(b).  Here, Plaintiffs seek

16  certification under Rule 23(b)(3).  The test of Rule 23(b)(3) is "far more demanding" than that of

17  Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010)

18  (quoting *Amchem*, 521 U.S. at 623-24).  Certification under Rule 23(b)(3) is proper "whenever

19  the actual interests of the parties can be served best by settling their differences in a single

20  action."  *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).  The rule requires two

21  different inquiries, specifically a determination as to whether (1) "questions of law or fact

22  common to class members predominate over any questions affecting only individual members"

23  and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating

24  the controversy."  Fed. R. Civ. P. 23(b)(3).

25      1. Predominance

26      "Rule 23(b)(3) predominance inquiry tests whether [the] proposed classes are sufficiently

27  cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  "Rule 23(b)(3)

28  focuses on the relationship between the common and individual issues.  When common questions

13

1    present a significant aspect of the case and they can be resolved for all members of the class in a

2    single adjudication, there is clear justification for handling the dispute on a representative rather

3    than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks and citations

4    omitted); *see In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir.

5    2009) ("[T]he main concern in the predominance inquiry . . . [is] the balance between individual

6    and common issues.").  Additionally, the class damages must be sufficiently traceable to

7    plaintiff's liability case.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35, (2013).

8        The Court is persuaded that "[a] common nucleus of facts and potential legal remedies

9    dominates this litigation." *Hanlon*, 150 F.3d at 1022.  As discussed above, there are common

10   questions regarding Defendant's vacation policy.  Specifically, Plaintiffs and all the proposed

11   class members were subject to Defendant's vacation policy at issue and were underpaid as a result

12   of Defendant's alleged violation of its policy.  (Doc. 21-1 at 19); *see, e.g., Wright v. Linkus*

13   *Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, "despite the existence

14   of minor factual differences between individual class members," where the case involved "alleged

15   policies that required class members to work without compensation, meal and rest periods, and/or

16   reimbursement for expenses").   Further, addressing all of the common questions raised in this

17   single action will preserve the court's time and resources.  Accordingly, this factor weighs in

18   favor of certification under Rule 23(b)(3).

19        2. Superiority

20        "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

21   objectives of the particular class action procedure will be achieved in the particular case" and

22   "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

23   *Hanlon*, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to

24   superiority.  *See* Fed. R. Civ. P. 23(b)(3)(A-D).

25        The first factor considers "the class members' interests in individually controlling the

26   prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs

27   against class certification where each class member has suffered sizeable damages or has an

28   emotional stake in the litigation." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 444

(E.D. Cal. 2013).  Plaintiff and the proposed class do not assert any claims for emotional distress, nor is there any indication that the amount of damages any individual class member may recover could be substantially greater than the potential recovery of any other class member.  *See generally*, (Doc. 10); *see supra* at 4-5.

Further, the alternative method of resolution—pursuing induvial claims for a relatively modest amount of damages—would likely never be brought, as "litigation costs would dwarf potential recovery."  *Hanlon*, 150 F.3d at 1023.  Plaintiffs through counsel propose a net settlement amount of $783,704.17, to be split among a possible class of 6,495 individuals.  *See supra* at 5-7.  Given the presumed small size of each class member's claim, class treatment is not merely superior, but necessary to ensure a fair and efficient adjudication of this action.  *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class member's potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication.").

The second factor asks the Court to consider "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class member who wishes to control his or her own case may opt out of the class, *see* Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation."  *See Newberg on Class Actions* § 4:70 at p. 277 (5th ed. 2014) (emphasis omitted).  Here, "to the parties' knowledge, this is the only action which alleges underpayment of vacation wages."  (Doc. 21-1 at 20).

The third factor considers "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and the fourth factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(C-D).  In the context of a settlement, the third and fourth factors are rendered moot and irrelevant.  *Barbosa*, 297 F.R.D. at 444; *see Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tired, would present intractable management problems, for the proposal is that there be no trial." (citation omitted).

The only factors in play here weigh in favor of class treatment.  Under the circumstances, the court finds that the superiority requirement is satisfied.  Consequently, the Court finds conditional certification of the proposed Settlement Class is proper under Rule 23(b)(3).

II.  <u>Evaluation of the Settlement Terms</u>

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).[2]  Approval is required to ensure settlement is consistent with the plaintiff's fiduciary obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  Toward that end, "Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'"  *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).  Rule 23(e)(2) now directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account;

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including the timing of payment; and

>> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

---

[2] The hearing requirement applies to final approval, and the court will observe the requirement at that time.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (explaining hearing requirement applies before final approval).

1    Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24.  The Ninth Circuit has

2    determined this revision to Rule 23 requires courts "to go beyond [its] precedent." *Briseño*, 998

3    F.3d at 1026.[3]

4        A.  Representation of the Class

5            To determine the adequacy of representation under Rule 23(e)(2), the Court may consider

6    whether the interests of the named plaintiff are "aligned with the interests of the Class Members."

7    *Cottle v. Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "Class

8    Counsel are experienced and competent" supports a conclusion that the class is adequately

9    represented.  *Id.*; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties

10   represented by competent counsel are better positioned than courts to produce a settlement that

11   fairly reflects each party's expected outcome in litigation.").  Thus, the adequacy analysis under

12   Rule 23(e)(2) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively."

13   *Moreno v. Beacon Roofing Supply, Inc.*, No. 19cv185-GPC(LL), 2020 WL 1139672, at *5 (S.D.

14   Cal. March 9, 2020).  Because Plaintiffs carried their burden to show the applicable prerequisites

15   were satisfied under Rule 23(a), the Court finds this requirement under Rule 23(e)(2) is also

16   satisfied.  *Moreno v. Beacon Roofing Supply, Inc.*, 2020 WL 1139672, at *5 (S.D. Cal. Mar. 9,

17   2020).

---

20           [3] Previously, the Ninth Circuit has identified several factors to determine whether a
21   settlement agreement meets the standards including:

22           the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further
             litigation; the risk of maintaining class action status throughout the trial; the amount
23           offered in settlement; the extent of discovery completed and the stage of the proceedings;
             the experience and views of counsel; the presence of a governmental participant; and the
24           reaction of the class members to the proposed settlement.
25
     *Staton*, 327 F.3d at 959 (citation omitted).  The Court focuses its analysis herein on the factors
26   enumerated in Rule 23.  *See Briseño*, 998 F.3d at 1026; *see also Herrera v. Wells Fargo Bank,
     N.A.*, No. SACV 18-332JVS (MRWx), 2021 WL 3932257, at *8 (C.D. Cal. June 8, 2021) ("The
27   goal of [amended Rule 23(e)] is…to focus the [district] court and the lawyers on the core
     concerns of procedure and substance that should guide the decision whether to approve the
28   proposal") (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

B. Negotiation of the Settlement

Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement.  *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  However, the Ninth Circuit has also observed that "settlement class actions present unique due process concerns for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Thus, the Court must determine whether the process by which the parties arrived at the settlement is the product of an arm's length bargain, rather, than the product of collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

In particular, when a class action settlement agreement is reached prior to a class being certified, district courts must be watchful "not only for explicit collusion but also for more subtle signs that class counsel have allowed pursuit of their own-self interests and that of certain class members to infect the negotiations."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 94; *see also Briseño*, 998 F.3d at 1023.  These subtle signs include:

> (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) the existence of a "clear sailing" arrangement, which provides for the payment of attorneys' fees separate and apart from class funds and carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947.

1. Whether there is a disproportionate distribution to counsel.

The Settlement Agreement provides that class counsel may request attorneys' fees up to $458,333.33, which is 33% of the gross settlement amount.  (Doc. 21-1 at 12).  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33.33% of the total settlement value, with 25% considered the benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  Because the fees requested are within the range awarded within the Ninth Circuit, the Court finds, at this preliminary stage, that the Settlement does not provide a disproportionate distribution to

18

1   counsel.  *See Millan*, 310 F.R.D. at 612 (finding no disproportionate distribution when class

2   counsel was to receive a third of the settlement fund as "although significantly above the

3   benchmark for this Circuit" it was "not unreasonable as an upper bound").

4        2. Existence of a "clear sailing" agreement

5        In general, a "clear sailing" provision is one in which the parties agree to the "payment of

6   attorneys; fees separate and apart from the class funds."  *In re Bluetooth Headset Prods. Liab.*

7   *Litig.*, 654 F.3d at 947.  The Ninth Circuit has also recognized a "clear sailing" arrangement also

8   exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an

9   agreed-upon amount.  *Id.*; *see e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012).

10       Here, the Settlement Agreement indicates that the proposed attorneys' fees and litigation

11  costs shall be "subject to approval by the Court."  (Doc. 21-1 at 14).  Plaintiffs indicate they

12  intend to file an application for attorneys' fees, costs, and Plaintiffs' incentive awards at least 14

13  days prior to the due date for objections.  *Id.* at n.5.  As the amount of fees and costs to be

14  awarded shall be determined exclusively by the Court, the Court finds there is no evidence of a

15  "clear sailing" agreement.

16       3. Whether there is a reversion to Defendant

17       The parties did not arrange for any unawarded fees to Defendant.  Instead, the Settlement

18  Agreement proposes "[a]ny portion of the requested attorneys' fees and costs not awarded to

19  Class Counsel shall be part of the Net Settlement Amount and shall be distributed to Settlement

20  Class Members as provided in the Agreement."  (Doc. 21-1 at 13).  Because unawarded fees and

21  costs will be distributed to Settlement Class Members, this factor does not support a finding of

22  collusion.

23       Based on the three facts set above, the Court finds that the proposed Settlement

24  Agreement "appears to be the product of serious, informed, non-collusive negotiations."  *In re*

25  *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007); *see Murillo v. Pac.*

26  *Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) (the assistance of a mediator in the negotiation

27  of a settlement agreement supports a finding the settlement was negotiated at arms-length).  Thus,

28  this factor under Rule 23 supports final approval of the class settlement.

1    C.  The relief provided for the class

2    "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an

3    abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624

4    (9th Cir. 1982) (citations omitted); *see Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1242

5    (9th Cir, 1998) (a proposed settlement may be fair, adequate, and reasonable even though greater

6    recovery might be available to the class members at trial).  When analyzing an agreement, the

7    Court should examine "the complete package taken as a whole," and the proposed settlement is

8    "not to be judged against a hypothetical or speculative measure of what might have been achieved

9    by the negotiators." *Officers for Justice*, 688 F.2d at 628.  Moreover, the Ninth Circuit has long

10   deferred to parties' private, consensual decisions.  *See Hanlon*, 150 F.3d at 1027.

11        The proposed gross settlement is $1,375,000.  (Doc. 21-1 at 9).  After the anticipated

12   deductions from the gross amount, $783,704.17, will be dispersed to the participating class

13   members.  *Id*. at 9-10.  Counsel for Plaintiffs estimate a former employee, as a member of the

14   Waiting Time Penalties Subclass, will receive $175, without any payroll deductions.  (Doc. 21-1

15   at 22).  Additionally, all Class Members will receive on average $30, minus payroll taxes on the

16   portion attributable to wages.  *Id*.  As discussed in greater detail below, the Court finds the

17   proposed relief provided to the Settlement Class supports preliminary approval of the Settlement.

18        1. Costs, risks, and delays

19        A primary concern in evaluating a proposed class settlement "relate[s] to the cost and risk

20   involved in pursuing a litigated outcome."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee

21   Notes.  "[T]here is a strong judicial policy that favors settlements, particularly where complex

22   class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

23   2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  As a result,

24   approval of settlement is "preferable to lengthy and expensive litigation with uncertain results."

25   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If the

26   settlement were to be rejected, the parties would have to engage in further litigation, including

27   seeking class certification and discovery on the issue of damages.

28

                                        20

1    Defendant denies all of Plaintiffs' claims and asserted a wide variety of defenses, and

2    challenges Plaintiffs' calculation of damages and penalties.  (*See* Doc. 21-1 at 8; Doc. 21-2 at Ex.

3    A, Settlement Agreement, Sec. II(2)).  Plaintiffs argue "when considering the probability of

4    lengthy litigation in the absence of a settlement, the risk that Plaintiffs and Class Members might

5    not have been able to succeed at trial, and the risk that a jury could award damages less than

6    $1,375,000, the settlement amount is reasonable."  (Doc. 21-1 at 24).  The $1,375,000 settlement

7    amount represents over 56% ($2,434,639.95) of Plaintiffs' estimation of Defendant's maximum

8    potential liability for underpaid vacation wages.  (Docs. 21-1 at 7, 21-2 at ¶ 11).  Plaintiffs note

9    the $1,375,000 settlement amount reflects over 8% ($16,767,875.50) of Defendant's "maximum

10   potential liability for all of Plaintiffs' claims, including derivative claims."  *Id.*

11   The 56% markdown is not inherently unreasonable if one considers only the non-

12   derivative claims.  However, it would be inappropriate to consider only the non-derivative claims

13   in this analysis, particularly because the scope of the release and proposed settlement includes the

14   derivative claims.  *See e.g., Cashon v. Encompass Health Rehab. Hosp. of Modesto, LLC*, No.

15   1:19-cv-00671-JLT-SKO, 2022 WL 95274, at *6 & n.5 (E.D. Cal. Jan. 10, 2022).

16   Courts commonly approve proposed settlement amounts that constitute a higher

17   proportion of the defendant's possible exposure than the parties here estimate – a settlement

18   amount equivalent to just 8% of Defendant's maximum potential liability for all of Plaintiffs'

19   claims.  *Cf. Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-cv-0699 KJN, 2022 WL 2817435, at

20   *11-13 (E.D. Cal. July 19, 2022) (denying preliminary approval because the proposed settlement

21   including 8% of projected value of non-PAGA wage and hour claims was below the range

22   typically approved and plaintiff needed to "better explain the reasonableness" of the proposed

23   recovery), *with Dunleavy v. Nadler (In re Mego Fi. Corp. Sec. Litig.)*, 212 F.3d 454, 458-59 (9th

24   Cir. 2000) (affirming a 16.67 % settlement approval for a weak and risky case); *Greko v. Diesel

25   U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. April 26, 2013) (the 24%

26   settlement approval was reasonable in light of the uncertainties involved in the litigation); *Glass

27   v. UBS Fin. Servs., Inc.*, No. 06-cv-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. January 26,

28

2007) (finding settlement of wage and hour class action for 25% to 35% of the claimed damages to be reasonable).

From Plaintiffs' briefing, it appears that their low percentage may be because they question the likelihood of any actual recovery and the risks related to prolonged litigation.  (Doc. 21-2 at ¶ 12).  Counsel for Plaintiffs note Plaintiffs could face difficulties to establish liability and prevail at certification and trial, in light of Defendant's legal and factual defenses.  *Id*. Specifically, Counsel for Plaintiffs claim Defendant could argue its vacation benefits are optional forms of additional compensation, which it is not legally required to provide.  *Id*. at ¶ 19.  That Plaintiffs' breach of contract claim is not viable because the employment offered to and accepted by Class Members was at will.  *Id*. at ¶ 20.  Further, Counsel for Plaintiffs contend Defendant could argue Plaintiffs' promissory estoppel claim would face obstacles, because the written agreement does not support a claim that Class Members applied for or accepted a job with Defendant, under the condition that Defendant provides paid vacation as specified in its vacation policy.  *Id*. at ¶ 21.  Lastly, Counsel for Plaintiffs note, effective July 25, 2022, Defendant changed its vacation policy which could limit Plaintiffs' recovery period.  *Id*. at ¶ 22.

In addition, the Court has concerns about the allocation of employer payroll taxes under the Settlement.  The Settlement Agreement anticipates a net settlement of $783,704.17, minus the employer's share of payroll taxes due on the portion of the Individual Settlement Payments allocated to wages from the Gross Settlement Amount.  (Docs. 21-1 at 9-10, 21-2 at 33).  The parties should address in advance of any final approval whether it is appropriate for the employer portion of any payroll taxes to be paid from the settlement fund.  *See Perez v. All Ag, Inc.*, No. 1:18-cv-00927-DAD-EPG, 2020 WL 1904825, at *7 (E.D. Cal. April 17, 2020) ("Here, however, it appears that the employer payroll taxes will be paid from the fund set aside for unpaid wages, depriving employees of the unpaid wages that are due.  The court cannot approve this provision as interpreted here.").

Despite the potential concern of the proposed settlement amount, the Court finds, at this preliminary stage, that approval is reasonable based on the strength of Plaintiffs' case and the

1    aforementioned risks of continued litigation.  *See e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d

2    948, 966 (9th Cir. 2009).

3             2. Proposed Distribution

4             "[T]he goal of any distribution method is to get as much of the available damages remedy

5    to class members as possible and in as simple and expedient a manner as possible."  *Hilsley v.*

6    *Ocean Spray Cranberries Inc.*, No. 3:17-cv-2335-GPC-MDD, 2020 WL 520616, at *7 (S.D. Cal.

7    January 31, 2020) (citing Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution Method, 4

8    NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).  "Often it will be important for the court to

9    scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."

10   Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  The proposed method for processing

11   claims "should deter or defeat unjustified claims, but the court should be alert to whether the

12   claims process is unduly demanding."  *Id*.

13            Here, Class Members are not required to take any action, such as submitting a claim form,

14   to receive their settlement payment.  (Doc. 21-1 at 6).  Instead, Class Members will be identified

15   through Defendant's employment records and the settlement administrator will search for class

16   member's most recent address through the National Change of Address Database.  (Doc. 21-2 at

17   16-17, 30).  Class Members only need to take action if they wish to opt out of the settlement.  *Id*.

18   at 6, 9-10.  Because submission of a claim form is not required, the proposed method of

19   distribution is not "unduly demanding" upon Class Members and will facilitate payment for

20   legitimate claims.  *See Jackson v. Fastenal Co.*, No. 1:20-cv-00345-NONE-SAB, 2021 WL

21   5755583, at *11 (E.D. Cal. Dec. 3, 2021) (holding that "the proposed method of distributing relief

22   is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and

23   adequate" where the class members did not have to file a claim).

24            Further, the Settlement Agreement properly acknowledges that Class Members may not

25   exclude themselves from the PAGA portion of the settlement and will have released the PAGA

26   claims even if they exclude themselves from the Settlement Class.  (Doc. 21-2 at Ex. A,

27   Settlement Agreement, Sec. III(12)).  The Class Notice sufficiently informs Class Members they

28   will receive a pro-rata portion of the PAGA settlement amount and that, even if they exclude

23

1    themselves from the Class Settlement, they "will still release the PAGA claims" and "will be

2    bound by the release of PAGA claims" regardless. *Id.*

3         3. Attorneys' fees

4         When evaluating the terms of a settlement, "courts must scrutinize 'the terms of any

5    proposed award of attorney's fees.'" *McKinney-Drobins v. Oreshack*, 16 F.4th 594, 607 (9th Cir.

6    2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii).  "[T]he new Rule 23(e) makes clear that courts

7    must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in

8    determining whether the settlement is 'adequate' for class members." *Id.* (quoting *Briseño*, 998

9    F.3d at 1024).

10        As discussed above, the Court found, at this preliminary stage, that the Settlement

11   Agreement does not provide a disproportionate distribution to counsel.  Given that Class Counsel

12   intends to move separately for attorneys' fees and costs (Doc. 21-1 at 13, n. 5), the Court need not

13   determine at the preliminary stage whether a 33% award is reasonable.  However, in any

14   forthcoming motions for attorneys' fees and costs, Class Counsel will be expected to fully

15   substantiate the justification of an award exceeding the Ninth Circuit's 25% benchmark.  *Powers*,

16   229 F.3d at 1256.  Any party seeking fees bears the burden of establishing that the fees and costs

17   were reasonably necessary to achieve the results obtained.  *Fischer v. SJB-P.D., Inc.*, 214 F.3d

18   1115, 1119 (9th Cir. 2000); *see Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th

19   Cir. 2007) (a fee applicant must provide time records documenting the tasks completed and the

20   amount of time spent on the action).  Therefore, a fee applicant **must provide time records**

21   **documenting the tasks completed and the amount of time spent on the action**.  *Hensley v.*

22   *Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46

23   (9th Cir. 2007).

24        4. Agreements made in connection with the proposal

25        Plaintiffs identify no other agreements made in connection with the proposed settlement.

26   *See* Fed. R. Civ. P. 23(e)(2)(C), (e)(3).  Therefore, this final sub-factor of "the relief provided for

27   the class" weighs in favor of approving the settlement.

28

### D.  Treatment of Class Members

Rule 23 requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit."  *Hilsley*, 2020 WL 520616, at *7 (citation omitted).

Plaintiff asserts because approximately 75% of Defendant's proposed maximum potential exposure in this action is for waiting time penalties, under the Settlement, the members of the waiting time penalties subclass will receive 75% of the net settlement amount.  (Doc. 21-1 at 24). The remaining 25% will be divided among all Settlement Class Members based on the number of workweeks worked during the settlement class period.  *Id.*  This results in the settlement paying 4% of the estimated maximum value of the waiting time penalties claim, and 8% for the underpaid vacation wages claim.  The Court finds this proposed settlement distribution scheme is equitable given the dramatic difference in the proposed damages between the two claims.

Next, the 25% to be divided among all Settlement Class Members will be distributed "on a pro-rata basis based on the number of Compensable Work Weeks during which s/he worked in proportion to the aggregate number of Compensable Work Weeks worked by all Settlement Class members."  (Doc. 21-2 at 34).  While not a perfect proxy, relying on the number of pay periods worked appears to be a reasonable and efficient way of effectively determining how to distribute relief among Class Members with variable claims.  *See Cooks v. TNG GP*, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) (observing that the calculation of payments to class members "on a pro-rata basis based on the number of compensable workweeks each member worked … is fair and treats class members equitably"); *see also Gomez-Gasca v. Future AG Mgmt. Inc.*, 2020 WL 6149688 at *4 (N.D. Cal. Oct. 20, 2020) (noting that in the preliminary approval stage, "the Court approved the proposed plan pro-rata allocation based on the number of workweeks the class member performed work during the Class Period"); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898 at *5 (S.D. Cal. Oct. 29, 2020) (finding a pro-rata distribution plan was equitable and weighed in favor of approving the settlement terms).

As discussed above, the Court finds for the purpose of preliminary approval of this action, the proposed incentive award is not so disproportionate that it necessarily creates a conflict of interest and renders Plaintiffs as inadequate representative.  Likewise, the Court finds for the purpose of preliminary approval of this action, the proposed incentive award is not so out of step that it violates Fed. R. Civ. P. 23(e)(2)(D).  Again, if Plaintiffs intend to seek such an award, they will be required to provide additional evidence and argument, to persuade the Court their additional compensation is equitable.

Accordingly, for the aforementioned reasons, the Court has evaluated the terms of the Settlement Agreement and holds it is fair, reasonable, and adequate.

**PAGA Claim**

The Court next considers whether the settlement is fundamentally fair, adequate, and reasonable with reference to the public policies underlying the PAGA.  California adopted PAGA to allow individual plaintiffs "to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies."  *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); Cal. Lab. Code § 2699(a); *Urbino v. Orkin Servs. Of Cal., Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013).  When a plaintiff brings a PAGA action, they do so as the "proxy or agent of the state's labor law enforcement agencies,… who are real parties in interest."  *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F. 3d 425, 435 (9th Cir. 2015); *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

Pursuant to PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  PAGA defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  *Id*.  A judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government."  *Arias*, 46 Cal. 4th at 986; *See O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) ("[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to

1    their fellow aggrieved workers who are effectively bound by any judgment.") (citing *Iskanian v.*

2    *CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)).

3          To bring an action under PAGA, an aggrieved employee must first provide written notice

4    to the employer and to the LWDA.  Cal. Lab. Code § 2699.3(a)(1).  Recovery under PAGA is

5    limited to civil penalties, and the civil penalties must be allocated with 75% directed to the

6    LWDA and 25% to aggrieved employees.  Cal. Lab. Code § 2699(i).  Any proposed settlement of

7    PAGA claims must be submitted to the LDWA, and a trial court must "review and approve" any

8    settlement of PAGA claims.  Cal. Lab. Code § 2699(l)(2); *see also Haralson v. U.S. Aviation*

9    *Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (because settling a PAGA claim

10   "compromises a claim that could otherwise be brought by the state," it requires that a court

11   "review and approve any settlement of any civil action pursuant to [PAGA]") (citation omitted).

12         Although there is no binding authority establishing the standard of review for PAGA

13   settlements, California district courts "have applied a Rule 23-like standard, asking whether the

14   settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of

15   PAGA's policies and purposes.'"  *Haralson*, 383 F. Supp. 3d at 972 (citations omitted).  This

16   standard is derived principally from the LWDA itself.  *O'Connor*, 201 F. Supp. 3d at 1133.  The

17   LDWA indicated:

18         It is thus important that when a PAGA claim is settled, the relief provided for under the
           PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to
19         benefit the public and, in the context of a class action, the court evaluates whether the
           settlement meets the standards of being "fundamentally fair, reasonable, and adequate"
20         with reference to the public policies underlying the PAGA.

21

22   *Id*. (citation omitted).  A court analyzing the compromise of a PAGA claim must therefore

23   consider whether the settlement is "'fundamentally fair, reasonable, and adequate' with reference

24   to the public policies underlying the PAGA." *Id*.  "By providing fair compensation to the class

25   members as employees and substantial monetary relief, a settlement not only vindicates the rights

26   of the class members as employees but may have a deterrent effect upon the defendant employer

27   and other employers, an objective of PAGA."  *Id*. at 1134.

28

27

1    Class Counsel reports that the proposed Settlement Agreement was submitted to the

2    LWDA in compliance with the Labor Code.  (Doc. 21-2 at 12, 81).  Plaintiff seeks to settle the

3    PAGA claim for $$68,750—75% paid to the LWDA and 25% to the Settlement Class—despite

4    asserting its maximum value is $4,212,103.35.  *Id*. at 6.  Thus, Plaintiffs propose settling the

5    PAGA claim for 1.6% of its estimated full worth.  (Doc. 21-1 at 14).

6    Plaintiff claims "[t]his result falls within the range of other approved PAGA settlements,

7    as courts frequently approve PAGA awards between 0.2% to 2.2% of the total potential penalties.

8    *Id*.  Plaintiff offers no rationale for settling the PAGA claim for such a relatively meager value.

9    *See O'Connor*, 201 F. Supp. 3d at 1133-34 (rejecting a proposal to settle PAGA claims for $1

10   million where counsel previously valued them at over $1 billion, noting the court's concern that

11   the PAGA claim was being used "simply as a bargaining chip in obtaining a global settlement for

12   Uber's benefit").

13   Plaintiffs' failure to adequately explain the excessive discount on their PAGA claims

14   prevents this Court from any "real evaluation of the reasonableness of this settlement" with

15   respect to Plaintiffs' penalties.  *Gonzalez v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-

16   DAD-JLT, 2018 WL 4388425, at *9 (E.D. Cal. September 13, 2018).  Therefore, the Court shall

17   defer the resolution of the adequacy of Plaintiffs' PAGA settlement pending further information

18   from the parties regarding the reasons for the discounted settlement recovery.

19   **Appointment of Settlement Administrator**

20   The parties have agreed upon and propose that the Court appoint Simpluris, Inc. to serve

21   as the Settlement Administrator.  (Doc. 21-4).  Simpluris will be charged with:

22

23   (a) establishing and maintaining a fund for Class Members; (b) calculating all amounts
     due to each Class Member pursuant to the Settlement; (c) processing checks and mailing

24   payments to Class Members; (d) preparing, processing, and filing all applicable tax forms
     and tax returns; (e) establishing and maintaining a calendar of administrative deadlines

25   and responsibilities; (f) printing and mailing by First-Class Mail the Notice of Pendency
     of a Class Action Settlement to Class Members in English; (g) conducting a National

26   Change of Address database search prior to mailing the Notice of Settlement to Class
     Members and performing a skip-trace on any Notice of Settlement returned as

27   Undeliverable; (h) receiving and validating written requests to be excluded from the
     Settlement, written objections to the Settlement, and disputes regarding the number of

28

28

1
2
3

workweeks or pay periods that a Class Member worked for Defendant; (i) providing weekly reports to counsel; and (j) performing any other tasks necessary to carry out its responsibilities as set for in the Settlement, as the Parties mutually agree, or as the Court orders Simpluris to perform.

4   *Id*. at 3.  Settlement administration fees and costs are to be deducted from the Gross Settlement

5   Amount, payable to Simpluris.  *Id*. at ¶ 13.  Based upon the recommendation and request of the

6   parties, Simpluris shall be appointed as the Settlement Administrator.  The parties selected

7   Simpluris, Inc. as the Settlement Administrator in this action.  *Id*. at 14.  The parties estimate,

8   subject to Court approval, that $38,400 will be deducted from the Gross Settlement Agreement

9   for Simpluris's administration of the settlement.  (Doc. 21-4 at ¶ 13).

10  **<u>Approval of Class Notice</u>**

11          The class notice must satisfy the requirements of the Federal Rules of Civil Procedure,

12  which provides the notice "must clearly and concisely state in plain, easily understood language"

13  the following information:

14
15
16
17

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the members so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

18  Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all

19  circumstances, to apprise interested parties of the pendency of the action and afford them an

20  opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

21  306, 314 (1950).

22          The proposed notice is sufficient to satisfy the standards of Rule 23(c)(2)(B).  It contains a

23  concise and comprehensible summary of the action, the class, subclass, and claims.  (Doc. 21-2 at

24  48-50).  It contains a breakdown of the settlement and the method by which an individual's

25  claims will be calculated.  *Id*. at 51-52.  The notice also describes the method by which class

26  members can be excluded from this action, and/or object to the proposed settlement.  *Id*. at 53-54.

27  Additionally, the notice provides details about the binding nature of the settlement.  *Id*. at 52-53.

28

The notice does contain a small number of non-substantive omissions that Plaintiffs highlighted.  *Id*. at 48-55.  The Court shall order Plaintiffs to make the following corrections before sending the notice to class members, including the proper case number for this action, the date of the hearing for Final Approval of Class Settlement, the deadline for returning a request for exclusion form, the deadline for objecting to the proposed settlement, and the Settlement Administrator's information.  *Id*.

The Court also finds the proposed notice distribution to be appropriate.  Within 51 calendar days after the preliminary approval of the Settlement, the Settlement Administrator shall send the Class Notice to Settlement Class Members via first-class mail.  (Doc. 21-1 at 15).  The Settlement Administrator will run a check of the Class Members' addresses against the National Change of Address Database, will use applicable forwarding addresses, and all appropriate tracing methods to ensure that the class notice is received by all Settlement Class Members.  *Id*. at 15-16.  Class members will be provided 45 days to opt-out from or object to the Settlement.  *Id*. at 16.

**Conclusion and Order**

Based upon the foregoing and conditioned upon the below, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth under Rule 23 and Ninth Circuit precedent weigh in favor of preliminary approval of the settlement agreement. Accordingly, it is HEREBY ORDERED:

1.      The Court GRANTS preliminary approval of the Settlement Agreement and the Settlement Class based upon the terms set forth in the Settlement Agreement filed herewith.  The Court preliminarily finds that the Settlement is fair, adequate, and reasonable to the Class when balanced against the possible risks of further litigation issues relating to class certification, liability, calculating damages, and potential appeals.  The Court finds that: (a) significant investigation, research, and litigation have been conducted, such that the parties are able to fairly evaluate their respective positions, (b) settlement at this time will avoid the substantial cost, delay, and risk presented by further litigation of the action, (c) the Agreement resulted from extensive, informed, non-collective arm's length negotiations by experienced counsel with the

1   assistance of a reputable mediator, and (d) the Agreement is sufficient to warrant notice of the

2   Settlement to persons in the Settlement Class and a full hearing on the final approval of the

3   Settlement.

4   2.      The Court conditionally certifies and approves, for settlement purposes only the following

5   Settlement Class as set forth in the Settlement Agreement:

6
        All current and former Part-Time Supervisors, including employees with similar job titles
7       and/or duties, who worked for Defendant within the State of California during the
        Settlement Class Period, defined as from April 19, 2018, and through the date of the
8       Preliminary Settlement Approval, and who at least once during the Settlement Class
        Period took paid vacation under UPS's vacation policy, and whose average straight-time
9       daily paid hours exceeded 5.5 hours per day for the prior Vacation Year, but whose
        vacation pay was limited to 5.5 hours per day, or 27.5 hours per week of vacation in the
10      Vacation Year.

11

12  3.      The Settlement falls within the range of reasonableness and appears to be presumptively

13  valid, subject only to any objections that may be raised at the final fairness hearing and final

14  approval by this Court.

15  4.      The Court makes the following preliminary findings for settlement purposes only:

16          A.  The Settlement Class, which consists of a few thousand persons, is so numerous that

17          joinder of all members is impracticable;

18          B.  There appear to be questions of law or fact common to the Settlement Class for

19          purposes of determining whether this Settlement should be approved;

20          C.  Plaintiffs' claims appear to be typical of the claims being resolved through the

21          proposed settlement;

22          D.  Plaintiffs appear to be capable of fairly and adequately protecting the interests of the

23          Settlement Class Members in connection with the proposed settlement;

24          E.  Common questions of law and fact appear to predominate over questions affecting

25          only induvial persons in the Settlement Class.  Accordingly, the Settlement Class appears

26          to be sufficiently cohesive to warrant settlement by representation; and

27          F.  Certification of the Settlement Class appears to be superior to other available methods

28          for the fair and efficient resolution of the claims of the Settlement Class.

31

5.      Plaintiffs shall make the necessary changes identified by this Court in the Notice to Class Members attached to the Settlement Agreement.

6.      The Court shall approve the Notice to Class Members attached to the Settlement Agreement with the requested corrections implemented.

7.      The Court approves the procedure for Settlement Class Members to request exclusion from the Settlement as set forth in the Notice to Class Members.

8.      The Court approves the procedure for Settlement Class Members to object to the Settlement as set forth in the Class Notice to Class Members.

9.      The Court directs the mailing of the Notice to Class Members by U.S. first class mail to the Settlement Class Members in accordance with the Implementation Schedule set forth below. The Court finds that the dates selected for the mailing and distribution of the Notice to Class Members, as set forth in the Implementation Schedule, meet the requirements of due process and provide the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

10.     The Court confirms The Markham Law Firm and United Employees Law Group as Class Counsel.

11.     The Court confirms Oscar Diaz and Jace O'Guinn as the Class Representatives.

12.     The Court approves the Class Representative incentive award for Plaintiffs preliminarily up to the amount of $6,500 each, subject to a petition and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing

13.     The Court approves Simpluris, Inc. as the Settlement Administrator.

14.     The Court holds approval of Plaintiffs' California Private Attorneys General Act, Labor Code §§ 2698, et seq. ("PAGA"), claim in abeyance.  Plaintiffs may file a supplemental briefing regarding the reasons for their proposed PAGA settlement amount.

15.     The Court orders the following Implementation Schedule for further proceedings:

/ / /

| a. | Preliminary Approval | May 24, 2023 |
|----|----------------------|--------------|
| b. | Deadline for Defendant to Provide Class Information to Settlement Administrator. | June 23, 2023 |
| c. | Deadline to Mail Notice to Class Members | July 14, 2023 |
| d. | Deadline for Class Members to Postmark and/or Fax any Request for Exclusion | August 28 2023 |
| e. | Deadline for Class Members to Postmark and/or Fax any Objections | August 28, 2023 |
| f. | Deadline for Class Counsel to file Motion for Final Approval of Class Settlement | September 18, 2023 |
| g. | Deadline for Class Counsel to file Motion for Class Counsel Award | September 18, 2023 |
| h. | Deadline for Class Counsel and/or Defendant's Counsel to file a response to any objections | October 18, 2023 |
| i. | Final Approval Hearing | November 1, 2023, 10:30 a.m. |

16.     If the Court does not execute and file an Order of Final Approval and Judgment, or if the Effective Date of Settlement, as defined in the Settlement Agreement, does not occur for any reason, the Settlement Agreement and the proposed Settlement that is the subject of this Order shall become null, void, unenforceable and inadmissible in any judicial, administrative or arbitral proceeding for any purpose, and all evidence, court orders and proceedings had in connection therewith, shall be without prejudice to the status quo ante rights of the Parties to the litigation, as more specifically set forth in the Settlement Agreement.

17.     Pending further order of this Court, all proceedings in this matter except those contemplated herein and in the Settlement Agreement are hereby stayed.

18.     The Court expressly reserves the right to adjourn or continue the Final Fairness Hearing from time to time without further notice to members of the Settlement Class.

19.     The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

    Dated:   **May 24, 2023**                    _____

                                               UNITED STATES MAGISTRATE JUDGE