1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  OSCAR DIAZ, *et al.*

12              Plaintiffs,

13      v.

14  UNITED PARCEL SERVICE, INC., *et al*.

15              Defendants.

16

17

18

Case No. 1:22-cv-00246-CDB

ORDER GRANTING AS MODIFIED
PLAINTIFFS' UNOPPOSED MOTION FOR
APPROVAL OF ATTORNEY'S FEES AND
COSTS AND UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT

(Docs. 30-31)

19          Before the Court is the motion by Plaintiffs Oscar Diaz and Jace B. O'Guinn (hereinafter

20  collectively as "Plaintiffs") for approval of attorney's fees and costs and class representatives'

21  incentive awards and motion for final approval of class and representative action settlement.

22  (Docs. 30-31).[1]  The motions are unopposed.  For the reasons explained herein, Plaintiffs'

23  motions shall be granted as modified.

24

25

26

27          [1] The parties have consented to the jurisdiction of the United States Magistrate Judge and

28  this action has been assigned to Magistrate Judge Christopher D. Baker for all purposes.  (Doc.
    27).

**<u>Background</u>**[2]

On May 24, 2023, the Court issued an order granting Plaintiffs' motion for preliminary approval of class and representative action settlement. (Doc. 29). The Court found at the preliminary stage that the proposed settlement agreement did not provide a disproportionate distribution to Plaintiffs. *Id*. at 11-12, 24. The Court noted if Plaintiffs ultimately sought an award of $6,500 to each of the two named Plaintiffs, they would be "required to provide additional evidence and argument, to ensure that their additional compensation requested above other class members is justified." *Id*. at 12. Likewise, the Court directed class counsel to fully substantiate the justification of an award exceeding the Ninth Circuit's 25% benchmark for fees and to establish that such fees and costs were reasonably necessary to achieve the results obtained. *Id*. at 24. The Court also deferred "the resolution of the adequacy of Plaintiffs' Private Attorneys General Act ("PAGA") settlement pending further information from the parties regarding the reasons for the discounted settlement recovery." *Id*. at 28.

Following the grant of preliminary approval, on July 14, 2023, the settlement administrator Simpluris Inc. mailed 6,814 notices to the class members, of which 48 notices were returned as undeliverable. (Doc. 31-3 at ¶ 5). The deadline for class members to submit a request for exclusion, object and/or dispute the settlement was August 28, 2023. *Id*. at ¶ 7. Simpluris notes it had received three requests for exclusion from class members. *Id*. at ¶ 8. Simpluris states it had not received any objections or disputes to the settlement, the attorneys' fees, or class representatives' incentive awards. *Id*. at ¶¶ 9-10.

On August 14, 2023, Plaintiffs filed a motion requesting an award of attorneys' fees of $458,333.33, litigation costs in the amount of $21,213.94, class representatives' incentive awards in the amount of $6.500 to each of the Plaintiffs, and settlement administration costs in the amount of $38,400. (Doc. 30). No opposition was filed. On September 18, 2023, Plaintiffs filed an unopposed motion for final order and judgment approving class and representative action settlement. (Doc. 31). That same day, Elizabeth A. Banks, Counsel for Defendant United Parcel

---

[2] The Court incorporates the background information and procedural history of this case from its previous order granting Plaintiffs' motion for preliminary approval of class and representative action settlement. (Doc. 29).

1    Services, Inc. ("Defendant"), filed a declaration regarding Defendant's class action fairness

2    notices.  (Doc. 32).

3         On November 1, 2023, the Court held a hearing on Plaintiffs' motion for attorney fees and

4    motion for final order and judgment approving class and representative action settlement.  (Doc.

5    33).  Counsels Maggie Realin and Lisa Brevard appeared for Plaintiffs and Counsel Jennifer

6    Svanfeldt appeared for Defendant.  *Id*.  Plaintiffs noted at that hearing they had one additional

7    request for exclusion from the class.  Thereafter, on November 3, 2023, Plaintiffs filed a letter

8    brief regarding the issue of satisfying the employer's share of payroll taxes from settlement

9    proceeds.  (Doc. 34).

10   **The Proposed Settlement**

11      1.  The Class

12         For settlement purposes, the parties request approval of the following class of an

13   estimated 6,811 individuals:

14
         All current and former Part-Time Supervisors, including employees with similar job titles
15       and/or duties, who worked for Defendant within the State of California during the
         Settlement Class Period, defined as from April 19, 2018, and through May 24, 2023 and
16       who at least once during the Settlement Class Period took paid vacation under UPS's
         vacation policy, and whose average straight-time daily paid hours exceeded 5.5 hours per
17       day for the prior Vacation Year, but whose vacation pay was limited to 5.5 hours per day,
         or 27.5 hours per week of vacation in the Vacation Year.
18

19    (Doc. 31-1 at 7).  The class does not include any person who submitted a timely and valid opt-out

20   request.  *Id*.  Class members who do not opt out of the settlement will release Defendant from all

21   claims that relate to the causes of action asserted in this case or those that could have been

22   asserted in this action based on the facts alleged in Plaintiffs' operative complaint.  *Id*.

23      2.  PAGA Claim Members

24         The Settlement Agreement defines the PAGA Claim Members in the same manner as the

25   class is defined.  (Doc. 21-1 at at ¶ 29).  Twenty-five percent of the civil PAGA penalties will be

26   paid to the PAGA Settlement Members as described below.  *Id*. at 13.  The PAGA Settlement

27   Class Period means the time period from April 20, 2021, through May 24, 2023.  (Docs. 21-2 at

28   49).

                                          3

3. The Release of Claims

The Settlement Agreement defines the Released Parties as "Defendant, [its] past and present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys."  (Doc. 21-2 at 22).  The Settlement Agreement provides Plaintiffs shall:

> release the Released Parties from all for the Released Claims during the Settlement Class Period and PAGA Released Claims during the PAGA Period.  Plaintiffs, for themselves and their heirs, successors and assigns, further waive, release, acquit and forever discharge the Released Parties from any and all claims, actions, charges, complaints, grievances and causes of action, of whatever nature, whether known or unknown, which exist or may exist on behalf of Plaintiffs as of the date of this Agreement, including, but not limited to, any and all tort claims, contract claims, wage claims, wrongful termination claims, disability claims, benefits claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, quantum merit claims, and any and all claims arising under any federal state or other governmental statute, law, regulation or ordinance, including, but not limited to, claims for violation of the Fair Labor Standards Act (FLSA), the California Labor Code, the Wage Orders of California's Industrial Welfare Commission, other state wage and hour laws, the American Disabilities Act, the Age Discrimination in Employment Act (ADEA), the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act, California's Whistleblower Protection Act, California Business & Professions Code §§ 17200 et seq., and any and all claims arising under any federal state or other governmental statute, law, regulation or ordinance.

*Id*. at 27-28.  Plaintiffs' release includes a waiver of all rights under California Civil Code § 1542. *Id*. at 28.  Plaintiffs agree "to fully, finally and forever settle and release any and all claims against the Released Parties, known or unknown, suspected or unsuspected, which exist or may exist on behalf of or against the other at the time of execution of this Agreement, including, but not limited to, any and all claims relating to or arising from Plaintiffs' employment with Defendant." *Id*.

4. Summary of the Settlement Terms

Under the Settlement Agreement, Defendant will pay a total of $1,375,000 (the "gross settlement amount") allocated as follows: (1) $458,333.33 (up to one-third of the gross settlement

1    amount) for class counsel attorneys' fees; (2) $21,213.94 for litigation costs; (3) $13,000 for class

2    representative incentive awards; (4) $38,400 for settlement administration costs; (5) $51,562.50

3    for payment to the Labor and Workforce Development Agency ("LWDA"), as its share of the

4    75% of the $68,750 PAGA penalties; and $7,657.26 for estimated employer taxes.  (Doc. 31-1 at

5    8).

6         Assuming these allocations are awarded in full, approximately $784,832.97 (the "net

7    settlement amount") will be available for distribution to Settlement Class Members who did not

8    opt out of the settlement.  *Id.*  75% of the Net Settlement Amount will be distributed to Class

9    Members who are "members of the Waiting Time Penalties Subclass based on the number of

10   workweeks they worked at any time from and after April 19, 2019, through [May 24, 2023], in

11   proportion to the aggregate number of workweeks worked by all members of the Waiting Time

12   Penalties Subclass."  (Docs. 21-1 at 10; 31-1 at 8-9).  The remaining 25% of the net settlement

13   amount will be distributed to participating Class Members on a *pro rata* basis based upon the

14   number of workweeks during which the employee worked in proportion to the aggregate number

15   of workweeks by all Settlement Class Members.  *Id.*

16        The Settlement Administrator estimates the highest Waiting Time Penalties Subclass

17   Share to be paid is approximately $630.26 and the average to be paid is approximately $221.86.

18   (Doc. 31-3 at 4).  The highest Settlement Class Member Share to be paid is approximately $58.85

19   and the average to be paid is approximately $28.16.  *Id.*  When combining the Waiting Time

20   Penalties Subclass Share and the Settlement Share, the highest individual payment is $688.72,

21   and the average payment is $115.18.  *Id.*

22        All Settlement payments are subject to taxation and will be reported to the IRS and state

23   tax authorities.  (Doc. 31-1 at 9).  Twenty percent (20%) of each Class Member's Individual

24   Settlement Payment will be allocated as wages, forty percent (40%) as penalties, and forty

25   percent (40%) as interest, with withholding to apply only to the portion allocated to wages.  *Id.*

26   The payments made to the Waiting Time Penalties subclass will be allocated 100% as statutory

27   penalties.  *Id.*

28

Plaintiffs note this is a non-reversion cash settlement and Class Members need not submit a claim form to receive a payment. (Doc. 21-1 at 10). Settlement checks will be valid and negotiable for 180 calendar days. (Doc. 31-1 at 9). After that time, the parties propose that the funds represented by uncashed checks be tendered to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Civil Code §1500 *et seq.*, for the benefit of those Class Members who did not cash their checks, until such time that they claim their property, in compliance with Code of Civil Procedure section 384(b), and subject to the Court's approval. *Id.*

**Final Certification of Class Action**

Previously, the Court weighed the class action factors in considering preliminary approval of the settlement and found certification warranted. (Doc. 29 at 8-16). Since no additional issues concerning whether certification is warranted have been raised, the Court will not repeat its prior analysis here. *See, e.g., Harris v. Vector Marketing*, No. C—08-5198 EMC, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the court notes that it previously certified . . . a Rule 23(b)(3) class…[thus it] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); *In re Apollo Group Inc. Securities Litigation*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012) ("The Court has previously certified, pursuant to Rule 23[,] . . . and hereby reconfirms its order certifying a class"). The Court's concerns regarding Class Counsel's fees and Plaintiffs' incentive awards shall be addressed below. Accordingly, the Court finds final certification appropriate. The following class is therefore certified as set forth in the Settlement Agreement:

> All current and former Part-Time Supervisors, including employees with similar job titles and/or duties, who worked for Defendant within the State of California during the Settlement Class Period, defined as from April 19, 2018, and through the date of the Preliminary Settlement Approval, and who at least once during the Settlement Class Period took paid vacation under UPS's vacation policy, and whose average straight-time daily paid hours exceeded 5.5 hours per day for the prior Vacation Year, but whose vacation pay was limited to 5.5 hours per day, or 27.5 hours per week of vacation in the Vacation Year.

In addition, the following plaintiffs are confirmed as class representatives: Oscar Diaz and Jace B. O'Guinn.  The law firms of Markham Law Firm and United Employee Law Group are confirmed as Class Counsel, and Simpluris, Inc. is confirmed as the settlement administrator.

**Final Approval of Class Action Settlement**

Class actions require the approval of the court prior to settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."); *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985) (approval is required to ensure the settlement is consistent with the plaintiff's fiduciary obligations to the class).  This requires that: (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)-(5).  The settlement agreement was previously filed on the court docket (Doc. 21-2 at 14-46), and class members have been given an opportunity to object thereto.  The Court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

I. Notice

Adequate notice of the class settlement must be provided under Rule 23(e).  *Hanlon v. Chrysler v. Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds as recognized by Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020).  A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal…" Fed. R. Civ. P. 23(e)(1)(B).  The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice…" *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).  "The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness." *Low v. Trump Univ.,*

1  *LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) (quoting *In re Bank of Am. Corp*., 772 F.3d 125, 132

2  (2d Cir. 2014)).

3          The Court approved the parties' proposed notice plan when it granted preliminary

4  approval.  (Doc. 29 at 29-30).  The Court found the proposed notice plan was sufficient to satisfy

5  the standards of Rule 23(c)(2)(B).  *Id*. at 29.  Under the approved notice plan, Plaintiffs retained

6  Simpluris Inc. as settlement administrator.  (Doc. 31-3).  On July 14, 2023, Simpluris mailed

7  notice to the 6,814 class members.  *Id*. at ¶ 5.  As of September 14, 2023, Simpluris reported that

8  379 notices were returned by the post office.  *Id*.  For those without a forwarding address,

9  Simpluris performed an advanced address search (*i.e*. skip trace) on all of these addresses.  *Id*.

10  Simpluris used the Class Member's name, previous address, and Social Security number to locate

11  a more current address.  *Id*.  Three hundred thirty-one (331) notices were re-mailed to either a

12  newly found address, with forwarding addresses provided by Defendant, or at the request of the

13  Class Member.  *Id*.  Ultimately, after additional searches, 48 notices were undeliverable because

14  Simpluris was unable to find a better address.  *Id*.

15          The deadline for class members to object to or opt out of the settlement was August 28,

16  2023.  *Id*. at ¶ 7.  No class member has objected to the settlement, and four individuals have

17  requested exclusion from the class.  (Doc. 33).

18          In light of the above procedures, which adhere to the previously approved notice plan, the

19  Court finds that the parties have sufficiently provided notice to the settlement class members.  *See*

20  *Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16,

21  2016) (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was

22  sent in accordance with the approved notice plan, which was "consistent with the requirements of

23  Rule 23 and due process…").

24  II. Final Fairness Determination

25          At the final approval stage, the primary inquiry is whether the proposed settlement "is

26  fundamentally fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*,

27  696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a

28  whole, rather than the individual component parts, that must be examined for overall fairness."

*Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice*, 688 F.2d at 628); *Lane*, 696 F.3d at 818. The Court has already completed a preliminary examination of the settlement and found that it is fair, reasonable, and adequate. (Doc. 29 at 16-26). The Court will review the agreement again, mindful that the law favors the compromise and settlement of class action suits. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [they are] exposed to the litigants and their strategies, positions, and proof." *Stanton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill*, 361 F.3d at 576 n.7.

Consideration of the above factors alone is not sufficient to survive appellate review. *See Briseño v. Henderson*, 998 F.3d 1014, 1022-26 (9th Cir. 2021) (holding that the revised Rule 23(e) requires district courts "to go beyond our precedent" and mandates consideration of "the *Bluetooth* factors" to all class action settlements, regardless of whether settlement was achieved before or after class certification); *see also* Fed. R. Civ. P. 23(e)(2)(C)-(D). Under the revised Rule 23(e), "district courts must apply the *Bluetooth* factors to scrutinize fee arrangements…to determine if collusion may have led to class members being shortchanged." *Briseño*, 998 F.3d at 1026. The *Bluetooth* factors—also referred to as "subtle signs" of collusion—include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (ii) the existence of a "clear sailing"

9

1    arrangement, which provides "for the payment of attorneys' fees separate and apart from class

2    funds," or a provision under which defendant agrees not to object to the attorney's fees sought;

3    and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be

4    added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir.

5    2011) (internal quotations and citations omitted). "The presence of these three signs is not a

6    death knell—but when they exist, 'they require[] the district court to examine them,… develop

7    the record to support its final approval decision," and thereby 'assure itself that the fees awarded

8    in the agreement were not unreasonably high." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021)

9    (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)). Thus, while this Court has wide

10   latitude to determine whether a settlement is substantively fair, it is held to a higher procedural

11   standard, and in order "[t]o survive appellate review…[it] must show it has explored

12   comprehensively all factors and must give a reasoned response to all non-frivolous objections."

13   *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021) (quoting *Allen*, 787 F.3d at

14   1223-24). The Court shall address each factor in turn.

15       1.  Strength of Plaintiff Case

16           "An important consideration in judging the reasonableness of a settlement is the strength

17   of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l*

18   *Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)

19   (quoting 5 *Moore Federal Practice*, § 23.85[2][b] (Matthew Bender 3d. ed.)). When assessing

20   the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the

21   contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub.*

22   *Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach

23   such a conclusion because evidence has not been fully presented. *Id.* Instead, the court

24   "evaluate[s] objectively the strengths and weakness inherent in the litigation and the impact of

25   those considerations on the parties' decisions to reach these agreements." *Id.*

26           Class Counsels assert even though they are "confident in their position, they acknowledge

27   certain weaknesses in their legal claims." (Doc. 31-1 at 11). Specifically, Class Counsels claim

28   Defendant could argue its vacation benefits are optional forms of additional compensation, which

it is not legally required to provide.  (Doc. 30-2 at ¶ 5). They also identify as a litigation risk that Plaintiffs' breach of contract claim likely would be challenged as not viable because the employment offered to and accepted by Class Members was at will.  *Id*. at ¶ 6.   Further, Class Counsels contend Defendant could argue Plaintiffs' promissory estoppel claim would face obstacles, because the written agreement does not support a claim that Class Members applied for or accepted a job with Defendant, under the condition that Defendant provides paid vacation as specified in its vacation policy.  *Id*. at ¶ 7.   Counsels also claim Plaintiffs would face difficulty pursuing its Unfair Competition Law claim.  *Id*. at ¶ 8.   Lastly, Class Counsels note, effective July 25, 2022, Defendant changed its vacation policy which could limit Plaintiffs' recovery period.  *Id*. at ¶ 9.

Plaintiffs had a reasonably strong incentive to pursue settlement negotiations as to their vacation claims.  Plaintiffs faced a not-insignificant risk that their claims would not be certified and/or prevail at trial, should this litigation continue.  Accordingly, this factor favors approving the settlement.

2.   Risk, Expense, Complexity, and Likely Duration of Further Litigation and Maintaining Class Action Status Throughout Trial

A primary concern in evaluating a proposed class settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  In most situations, unless the settlement is clearly inadequate, approval of a settlement is "preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.  In analyzing this factor, the Court should compare the uncertainties of prolonged litigation with the immediate benefits that the Settlement provides to the Class Member.  *Id*. at 526 (citing *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (9th Cir. 1974)).

Plaintiffs contend they would have incurred significant costs in conducting additional discovery, bringing a motion for class certification, bringing and/or defending dispositive

1    motions, and preparing for and conducting trial.  (Doc. 31-1 at 13).  Plaintiffs argue settlement

2    would dispose of all the above-mentioned certification and litigation risks associated with their

3    vacation claims.  The Court finds avoiding a possible adverse ruling as to certification, trial, and

4    subsequent appeals in this case strongly weighs in favor of settlement rather than further

5    protracted and uncertain litigation.  With this settlement, Class Members have an opportunity for

6    an immediate, guaranteed payout instead of prolonged litigation which will run the risk of

7    uncertain recovery.  Accordingly, the Court finds that these factors weigh in favor of granting

8    final approval.

9         3.  Amount Offered in Settlement

10             A. Gross Settlement Amount

11        The parties' proposed gross settlement amount is $1,375,000.  (Doc. 31-1 at 8).  Plaintiffs

12   initially estimated that the maximum recovery in this case is $16,767,875.50.  (Docs. 21-1 at 7,

13   21-2 at ¶ 11).  The amount offered in settlement "is generally considered the most important"

14   factor of any class settlement.  *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL

15   1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173,

16   1178-79 (9th Cir. 2013)).  In determining whether the amount offered in settlement is fair and

17   reasonable, a court compares the proposed settlement amount to the maximum potential amount

18   recoverable through successful litigation.  *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,

19   213 F.3d 454, 459 (9th Cir. 2000).  A cash settlement amounting to only a fraction of the

20   potential recovery does not *per se* render the settlement inadequate or unfair.  *Id.*  Courts

21   regularly approve class settlements where class members recover less than one-quarter of the

22   maximum potential recovery amount.  *See Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO

23   (GJSx), 2017 WL 708766, at *10 (C.D. Cal. Feb. 16, 2017) (approving settlement where net

24   recovery to class members was approximately 7.5% of the projected maximum recovery amount);

25   *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a

26   settlement where the gross recovery to the class was approximately 8.5% of the maximum

27   recovery amount).

28

In its preliminary order, the Court expressed concerns that the proposed settlement amount represented only 8% of the maximum potential exposure for all of Plaintiffs' claims. (Doc. 29 at 22). In response, Plaintiffs assert the settlement was reached after hard-fought, contentious, arm's-length negotiations, and is consistent with similar awards granted in California district courts. (Doc. 31-1 at 14). Additionally, in the fairness hearing, Class Counsels reaffirmed their position that an 8% recovery was reasonable in light of the above-mentioned risks related to Plaintiffs' claims. In light of Plaintiffs' representations, the Court finds an 8% recovery of their maximum potential damages, while not excellent, is reasonable under Rule 23.

Additionally, the Court expressed concerns about the allocation of employer payroll taxes (calculated at $7,657.26 and representing approximately 0.5% of the gross settlement amount) under the Settlement. (Doc. 29 at 22) (citing *Perez v. All Ag, Inc.*, No. 1:18-cv-00927-DAD-EPG, 2020 WL 1904825, at *7 (E.D. Cal. April 17, 2020).

Plaintiffs assert deducting employer payroll taxes from the settlement fund is appropriate when the parties disclose the amount of employer's payroll taxes to be deducted, the parties do not make misrepresentations about the deduction and the settlement as a whole provides an overall benefit to the class. (Doc. 34 at 2-4) (citing *Alvarez v. City of Oxnard*, No. CV 19-8044 PSG (JCx), 2022 WL 3013093 (C.D. Cal. May 18, 2022)). Plaintiffs claim "in *Alvarez* the court observed that the inclusion of employer's payroll taxes was appropriate in the context of the benefit to the class, where the settlement represented 'over 70% of [plaintiffs'] hoped-for recovery at trial'" and thus, "[e]ven after Defendant's payroll taxes are deducted, the Settlement Class will still likely receive a significantly higher percentage of their hoped-for recovery at trial than most wage and hour class action settlements provide." *Id*. (citing *Alvarez*, 2022 WL 301309 at *5).

Here, Plaintiffs state they disclosed the amount of employer payroll taxes that would be deducted from the settlement. (Doc. 34 at 2). Plaintiffs assert they have not made misrepresentations about the employer payroll taxes but included information about the proposed deductions in their motion for preliminary approval, declarations, and within their notice to class members. *Id*. at 4. Plaintiffs argue, like *Alvarez*, that deducting the employer payroll taxes from

1    the gross settlement is appropriate, as the present recovery still represents a benefit in light of the

2    risk of "no recovery" for their "novel and uncertain claims." *Id*. at 2-3.

3         The Court finds that shifting the duty of payment of employer  payroll taxes to employees

4    is somewhat inequitable.  Employer payroll taxes are supposed to be paid directly by the

5    employer and are not deducted from an employee's paycheck.  *Perez*, 2020 WL 1904825, at *7,

6    n.7.  It appears that the employer's tax burden is being shifted onto the employees, depriving

7    them of unpaid wages that they are due.  *Id*. at *7.  However, in light of the relatively low amount

8    of deductions ($7,657.26 or $1.11 per class member) and the deductions to Class Counsels'

9    request for attorney fees (*see infra*), the Court finds any inequity to shifting the employers' tax

10   burden onto the class is *de minimis*.

11        B. PAGA penalties

12        As stated above, the settlement also provides $68,750 in PAGA penalties.  (Doc. 31-1 at

13   7-8).  Pursuant to PAGA, 75% of the civil penalties, or $51,562.50, will go to the LWDA and

14   25% or $17,187.50 will be distributed to Participating Class Members on a pro-rata basis.  *Id*.; *see*

15   Cal. Lab. Code § 2699(i).

16        Any proposed settlement of PAGA claims must be submitted to the LDWA, and a trial

17   court must "review and approve" any settlement of PAGA claims.  Cal. Lab. Code § 2699(l)(2);

18   *see Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (because

19   settling a PAGA claim "compromises a claim that could otherwise be brought by the state," it

20   requires that a court "review and approve any settlement of any civil action pursuant to [PAGA]")

21   (citation omitted).

22        Although authorities addressing the standard of review for PAGA settlements are limited,

23   in the class action context, California district courts "have applied a Rule 23-like standard, asking

24   whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in

25   light of PAGA's policies and purposes.'"  *Haralson*, 383 F. Supp. 3d at 972; *Officers for Justice*,

26   688 F.2d at 625; *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).  The LWDA

27   has provided some guidance regarding court approval of PAGA settlements.  *O'Connor v. Uber*

28   *Techs., Inc.*, 201 F. Supp. 3d 110, 1133 (N.D. Cal. 2016).  The LDWA indicated:

1

2

3

4

> It is [] important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluates whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

5   *Id.* (citation omitted).  Recognizing the distinct issues presented by class actions, this Court is

6   nevertheless persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed

7   standard in evaluating the PAGA-only settlement terms now before the court.  Accordingly, the

8   Court will approve a settlement of PAGA claims upon a showing that the settlement terms (1)

9   meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable,

10  and adequate in view of PAGA's public policy goals.  *Tenorio v. Gallardo*, No. 1:16-cv-00283-

11  DAD-JLT, 2019 WL 4747949, at *3 (E.D. Cal. Sep. 30, 2019).

12    When a proposed settlement involves overlapping class action and PAGA claims, courts

13  may employ a "sliding scale" in determining if the proposed settlement is "fundamentally fair,

14  reasonable, and adequate with reference to the public policies underlying the PAGA."  *O'Connor*,

15  201 F. Supp. 3d at 1134; *McClure v. Brand Energy Serv. LLC*, No. 2:18-cv-01726-KJM-AC,

16  2021 WL 2168149, at *10 (E.D. Cal. May 27, 2021); *Cooks v. TNG GP*, No. 2:16-cv-01160-

17  KJM-AC, 2020 WL 5535397, at *9-10 (E.D. Cal. Sep. 15, 2020).  As the district court in

18  *O'Connor* explained:

19

20

21

22

23

24

> if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled. By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees[] but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA. Likewise, if the settlement resolves the important question of the status of workers as employees entitled to the protection of the Labor Code or [provides] substantial injunctive relief, this would support PAGA's interest in "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance."

25  *Id.* at 1134-35 (quoting the LWDA's guidance).  However, when "the compensation to the class

26  amounts is relatively modest when compared to the verdict value, the non-monetary relief is of

27  limited benefit to the class, and the settlement does nothing to clarify [aggrieved workers' rights

28  and obligations], the settlement of the non-PAGA claims does not substantially vindicate PAGA."

1    *Id*. at 1135.  Finally, "where plaintiffs bring a PAGA representative claim, they take on a special

2    responsibility to their fellow aggrieved workers who are effectively bound by any judgment."  *Id*.

3    at 1134.  A plaintiff's special responsibility to other aggrieved workers is especially significant

4    because the "PAGA does not require class action procedures, such as notice and opt-out rights."

5    *Id*.  Thus,

6
> [t]he Court must be cognizant of the risk that despite this responsibility, there may be a
> temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip,
7    > wherein the rights of individuals who may not even be members of the class and the
> public may be waived for little additional consideration in order to induce the employer to
8    > agree to a settlement with the class.  *Id*.

9

10       Here, Plaintiffs seek to settle the PAGA claim for $68,750, despite estimating its

11   maximum value is $4,212,103.35.  (Doc. 21-1 at 14).  In its preliminary order, the Court

12   expressed concerns that the proposed settlement of the PAGA claim represented only 1.6% of its

13   estimated worth.  (Doc. 29 at 28).  The Court found Plaintiff's failure to adequately explain the

14   excessive discount on their PAGA claims prevents this Court from any "real evaluation of the

15   reasonableness of this settlement" with respect to Plaintiffs' penalties.  *Id*.  The Court deferred the

16   resolution of the adequacy of Plaintiffs' PAGA settlement pending further information from the

17   parties regarding the reasons for the discounted settlement recovery.  *Id*.

18       In response, Plaintiffs assert the discount is fair and reasonable.  (Doc. 31-1 at 17-19).

19   Specifically, Plaintiffs argue the LWDA did not object, move to intervene, or otherwise comment

20   on the settlement, signaling its acceptance of the settlement terms.  *Id*. at 17.  Plaintiffs also assert

21   the proposed settlement falls within the range of reasonableness, that the estimated amount may

22   have been reduced, and that "given the claims' many weakness, and the fact that vacation pay is a

23   benefit not legally required, the class settlement is 'relatively substantial.'"  *Id*. at 17-18.  In light

24   of Plaintiffs representations, and the LWDA's lack of opposition thereto, the Court finds that the

25   settlement amount related to Plaintiffs' PAGA claim is fair, reasonable, adequate in consideration

26   of PAGA's public policy goals, and is consistent with PAGA settlements approved by other

27   judges of this Court.  Specifically, the PAGA penalty here ($68,750) represents a larger share of

28   the total gross settlement amount (5% of $1,375,000) then penalties approved in other cases.  *Cf*.

1   *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22,

2   2017) (approving PAGA penalties representing 2.53% of the gross settlement fund); *Garcia v.*

3   *Gordon Trucking, Inc.*, No. 1:10-cv-00324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct.

4   31, 2012) (approving PAGA penalties representing 0.27% of the gross settlement fund).

5   Accordingly, the Court finds the amount offered in the settlement of the PAGA claims weighs in

6   favor of granting final approval.

7       4.   Extent of Discovery Completed and Stage of the Proceedings

8         A settlement "following sufficient discovery and genuine arms-length negotiation is

9   presumed fair." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citing

10  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).  Here, Plaintiffs contend the parties have spent

11  significant time investigating this action and conducting discovery for over a year.  (Doc. 31-1 at

12  15).  Plaintiffs note the parties spent considerable time on telephonic conferences regarding

13  discovery and reviewed voluminous documents and data regarding Defendant's policies, and time

14  and pay records.  *Id*.  Further, the parties participated in an all-day mediation session with an

15  experienced mediator.  *Id*.  In preparation for mediation, the parties prepared briefs containing

16  damages models.  *Id*.  With the help of the mediator, the parties' respective positions and

17  strengths and weaknesses of their claims and defenses were assessed.  In light of the above, the

18  Court finds that this factor weighs in favor of granting final approval.

19      5.   Experience and Views of Counsel

20        The Court is to "accord great weight to the recommendation of counsel because they are

21  aware of the facts of the litigation and in a better position than the court to produce a settlement

22  that fairly reflects the parties' expected outcome in the litigation." *Rodriguez v. Danell Custom*

23  *Harvesting, LLC.*, 327 F.R.D. 375, 388-89 (E.D. Cal. 2018) (citing *Nat'l Rural Telecomms.*

24  *Coop.*, 221 F.R.D. at 528).  Here, Class Counsels note they have extensive experience litigating

25  complex class actions in wage and hour cases.  *See* (Docs. 30-2, 30-3).  Class counsels assert the

26  proposed settlement is fair, adequate, and reasonable.  *Id*.  Therefore, the Court finds that Class

27  Counsel's experience and views weigh in favor of granting final approval.

28

1      6.  Presence of a Governmental Participant

2          As no government entity has participated in this matter, this factor is neutral.

3      7.  Reaction of the Class Members

4          "It is established that the absence of a large number of objections to a proposed class

5 action settlement raises a strong presumption that the terms of a proposed class settlement action

6 are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing

7 cases). The presumption that a settlement is fair, reasonable, and adequate is particularly strong

8 when there is an absence of a single objection to a proposed class action settlement. *See id.*;

9 *Barcia v. Contain-A-Way, Inc.*, No. 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal.

10 Mar. 6, 2009). Likewise, "[a] court may appropriately infer that a class action settlement is fair,

11 adequate, and reasonable when few class members object to it." *Cruz v. Sky Chefs, Inc.*, No.

12 4:12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014).

13          As stated above, class members have not filed objections to the settlement pending final

14 approval. *See* (Doc. 31-3); *Supra* at 2-3. Plaintiffs note they had only four requests for exclusion

15 from the class. *Supra* at 2-3. Accordingly, the Court finds this factor weighs in favor of granting

16 final approval.

17      8.  Subtle Signs of Collusion

18          In the Court's preliminary examination of the settlement, the Court found there was not a

19 disproportionate distribution to counsel, and there was no evidence of a "clear sailing" agreement

20 or reversion to Defendant. (Doc. 29 at 18-19). Again, the Court has reviewed the settlement

21 agreement and the parties' pleadings (Docs. 20-2, 31-1) and finds that the "subtle signs" of

22 collusion recognized by the Ninth Circuit are not present here. *Bluetooth*, 654 F.3d at 947.

23      9.  Conclusion

24          The Court finds the *Churchill* fairness factors support approval, and the *Bluetooth* factors

25 do not indicate collusion. The Court therefore is satisfied that the settlement agreement is the

26 product of arms-length negotiations between experienced and professional counsels and there are

27 no objections to address. Thus, the Court finds that the settlement is fair, reasonable, and

28 adequate under Rule 23(e) and final approval is therefore appropriate.

**Attorneys' Fees, Expenses, and Incentive Awards**

I. Reasonableness of Attorney's Fees

Class Counsels ask for $458,333.33 in attorney's fees. (Doc. 30-1 at 6). The Ninth Circuit and the California Supreme Court both have held that trial courts have discretion to award attorneys' fees based on either the lodestar/multiplier calculation or the percentage-of-recovery method. *Bluetooth*, 654 F.3d at 942; *Hanlon*, 150 F.3d at 1029; *Laffitte v. Robert Half Int'l Inc.* 1 Cal. 5th 480, 504 (2016).

The typical range of attorney's fees approved in the Ninth Circuit is 20 percent to 30 percent of the total settlement value, with 25 percent considered the benchmark. *Bluetooth*, 654 F.3d at 942. Here, Class Counsels request the Court approve a fee award of one-third of the gross settlement amount. (Doc. 30-1 at 11). Because Class Counsels ask the Court to depart from the "benchmark" of 25 percent, the Court must determine whether the requested percentage is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019) (concluding that district court should have "explained why attorneys' fees of 31.6% ($950,000 out of $3 million …) or more were justified" for purposes of performing the lodestar cross-check using a percentage of the total class recovery).

To evaluate whether the requested percentage is reasonable, the Ninth Circuit has favorably commended a district court's consideration of several factors: (1) the results achieved, (2) the risk of litigation, (3) the skill required of plaintiff's counsel and the quality of work performed, (4) the contingent nature of this action, and (5) awards granted in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). District courts have also considered the reaction of the class to the settlement and the length of the professional relationship. The Court will address each factor in turn.

1. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). "Exceptional results are a relevant circumstance" to support an adjustment from the benchmark

1    award.  *Vizcaino*, 290 F.3d at 1048; *Resnick v. Frank (In re Online DVD-Rental Antitrust*

2    *Litigation)*, 779 F.3d 934, 954-55 (9th Cir. 2015).

3         In this case, the $1,375,000.00 settlement amount represents over 56% ($2,434,639.95) of

4    Plaintiff's estimation of Defendant's maximum potential recovery for underpaid vacation wages.

5    (Doc. 31-1 at 12).  However, when Plaintiff's derivative claims are included, the $1,375,000.00

6    amount reflects over 8% of Defendant's maximum estimated potential recovery

7    ($16,767,875.50).  *Id.  See Cashon v. Encompass Health Rehab. Hosp. of Modesto, LLC*, No.

8    1:19-cv-00671-JLT-SKO, 2022 WL 95274, at *6 & n.5 (E.D. Cal. Jan. 10, 2022) (finding it

9    would be inappropriate to consider only the non-derivative claims when the scope of the release

10    includes the derivative claims).

11         Class Counsels contend that while "Plaintiffs remain confident in their position, we

12    acknowledge [the] claims could face difficulties at certification, and at trial, and there are

13    substantial risks that the continued litigation would not yield a better result than this settlement."

14    *See* (Doc. 30-2 at ¶ 4).  Class Counsels assert that the settlement is an excellent result based on

15    those certification and liability risks and this recovery is in the range of recoveries approved by

16    other district courts in California.  (Doc. 21-1 at 23; Doc. 30-1 at 12) (citing cases).

17         Recovery of over 8% falls on the low end of class settlement agreements previously

18    approved by California district courts.  *Martin v. Sysco Corp*. No. 1:16-cv-00990-DAD-SAB,

19    2019 WL 3253878, at *5 (E.D. Cal. Jul. 19, 2019) (citing cases).  This Court, among others, finds

20    the results achieved here are "good" but not "exceptional."  *See Atiqi v. Calnet, Inc.*, No. EDCV

21    14-00628-VAP (SPx), 2017 WL 11645624, at *7 (C.D. Cal. Aug. 22, 2017) (a settlement that

22    was "10% of the maximum net recovery for class members…would not be so exceptional as to

23    justify a departure from the benchmark."); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443,

24    446 (E.D. Cal. 2013) ("the circumstances of the litigation simply do not lead the Court to

25    conclude that the result is 'exceptional'" where the recovery for the class equaled "30% of

26    Plaintiff's calculation of Defendant's maximum liability exposure"); *Ontiveros v. Zamora*, 303

27    F.R.D. 356, 373 (E.D. Cal. 2014) (expressing doubt that a settlement totaling one-half to one-

28

third of the maximum potential recovery amount was exceptional).  Accordingly, given the relief

obtained, this factor favors an award equal to the benchmark.

2.  Risk of Litigation

The risk that litigation might result in no recovery is a significant factor in assessing the

fairness and reasonableness of an award of attorney's fees.  *Vizcaino*, 290 F.3d at 1048; *Chemical*

*Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994).  "[T]he risk of loss in a

particular case is a product of two factors (1) the legal and factual merits of the claim, and (2) the

difficulty of establishing those merits."  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

When class counsel undertakes an "extremely risky" action, an upward departure from the

benchmark is appropriate.  *See Vizcaino*, 290 F.3d at 1048 (an award above the benchmark was

appropriate where "counsel pursued [the] case in the absence of supporting precedents," and

"[t]wice plaintiffs lost in the district court—once on the merits, once on the class definition—and

twice counsel succeeded in reviving their case on appeal").

As stated above, Class Counsels assert there was a risk that further litigation might result

in no recovery for Plaintiffs.  (Doc. 30-1 at 12); *supra* at 10.  The Court agrees that Class

Counsels would have faced significant opposition from Defendant if a settlement had not been

reached.  Moreover, the novel issue identified by Class Counsels – to wit, the challenge of

recovering benefits that Defendant would contend it was not legally obligated to provide under its

vacation policy – is unique to this action.  *Cf. Vizcaino*, 290 F.3d at 1048 (finding case "extremely

risky" when, among other factors, plaintiffs lost twice in district court and there was an absence

of supporting precedent for plaintiffs' position).  Therefore, this factor supports an upward

departure from the benchmark.

3.  Skills Required and the Quality of Work

The Court also considers the skills required to prosecute and manage this litigation, as

well as counsel's overall performance.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th

Cir. 1995) (the complexity of issues and skills required may support a departure from the

benchmark fee award).  Class Counsels are experienced class action litigators that have

represented hundreds of consumers and employers and have obtained many large class action

settlements.  (Doc. 30-2 at ¶¶ 10-16).  Counsel Markham asserts he and his firm have spent a considerable amount of time "investigating the claims, drafting pleadings, law and motion practice, attending mediation, reviewing documents, and researching legal authorities, and extensive communications and meetings among the parties and counsel."  *Id*. at ¶ 18.  Counsel Markham estimates his firm (the Markham Law Firm) and United Employees Law Group devoted 326.5 hours to this action and another 20-30 hours in the preparation of these motions.  (Doc. 30-2 at ¶¶ 20-23; Doc. 30-3 at ¶ 6).

The Court finds the overall experience of the Markham Law Firm and United Employees Law Group undoubtedly benefited Plaintiff and the class in securing a settlement.  Moreover, Class Counsels argue they had to spend significant time investigating a novel issue in litigating this matter.  However, the pleadings do not support the conclusion that the time and labor required for this action was burdensome.  *Cf. Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 1:17-cv-00853-DAD-EPG, 2020 WL 1492672, at *8 (E.D. Cal. Mar. 17, 2020) ("counsel devoted approximately 1,375 hours and $44,825.32 in out-of-pocket expenses to litigating the case for almost four years.").

Here, Plaintiffs filed a first amended complaint on April 19, 2022 (Doc. 5), and a second amended complaint on June 27, 2022 (Doc. 10).  Approximately six weeks later, the parties agreed to participate in private mediation.  (Doc. 13).  The parties reached the proposed settlement in private mediation without formal discovery or motion practice.  (Doc. 31-2 at ¶¶ 4-7).  Class Counsels have not persuaded this Court that this case was materially more complex or difficult than other actions asserting wage-related claims, despite the novel issue identified above.  *See Monterrubio*, 291 F.R.D. at 458.  Moreover, Class Counsels have not identified any evidence that either firm was precluded from any other work because of this action.  This supports the conclusion that the time and labor required was not overly burdensome.  Therefore, this factor supports an award equal to the benchmark.

4.  Contingent Nature of this Action

Class Counsels argue the contingent nature of representation supports a 33% fee award.  (Doc. 30-1 at 14).  Counsel argues his "outlay of time and money in this case has been

considerable" and he "expended these resources despite the very real risk that they may never be compensated at all." *Id.*

The Ninth Circuit has suggested the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark. *Bluetooth*, 654 F.3d at 942 n.7 ("whether the fee was fixed or contingent" is "no longer valid" as a factor in evaluating reasonable fees) (citation omitted); *contra In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 954-55 (finding the contingent nature of litigation remains a relevant factor to evaluate a request from the common fund); *Clayton v. Knight Transp.*, No. 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (the contingent nature of a fee is an important factor in determining the fee award but risks that "are no greater than that associated with any other wage and hour action and no extraordinary circumstances exist that would support an increase from the 25% benchmark"). Class Counsels do not identify any unusual risk with the contingent nature of their fee in this action. Accordingly, this factor supports an award equal to the benchmark.

5. Awards Made in Similar Cases

In support of the fee request, Class Counsels argue the fees requested are "within the range of fees in class action cases commonly approved by the California district courts." (Doc. 30-1 at 15). Counsel lists several cases where federal courts in California awarded attorneys' fees of one-third of the gross settlement amount. *Id.* However, Class Counsels have not provided any analysis as to how these cases are similar to the matter now pending. Counsel only asserts that federal courts in California have and can award attorneys' fees in the amount of one-third of the gross settlement amount. "The Court declines to manufacture arguments on behalf of [Counsel]." *Martinez v. Semi-Tropic Coop. Gin*, No. 1:19-cv-01581-JLT-CDB, 2023 WL 3569906, at *28 (E.D. Cal. May 19, 2023). Therefore, this factor supports an award equal to the benchmark.

6. Reaction of the Class

The reaction of the class may also be taken into account when determining the reasonableness of a fee request. *In re Heritage Bond Litig.*, No. 02-ML-01475 DT, 2005 WL 1594403, at *21 (C.D. Cal. Jun. 10, 2005); *see Nat'l Rural Telecomm. Coop*, 221 F.R.D. at 529

("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").  According to Plaintiff, no class member has filed an objection to the settlement pending final approval.  (Doc. 30-4 at ¶¶ 11, 13).  Therefore, this factor supports an upward departure from the benchmark.

7.  Length of the professional relationship

Class Counsels commenced this action on behalf of Plaintiffs in February 2022 (Doc. 1), and it appears the professional relationship has lasted over 1.5 years.  The short duration of the professional relationship may warrant an award below the benchmark.  *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (finding that "the 25 percent standard award" was appropriate although "the litigation lasted more than 13 years").

8.  Lodestar crosscheck

The Court may also perform a lodestar cross-check to confirm that requested attorneys' fees are reasonable.  *Indirect Purchaser Class v. Erwin (In re Optical Disk Drive Prods. Antitrust Litig.)*, 959 F.3d 922, 933 (9th Cir. 2020).  The lodestar method calculates attorney fees "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonably hourly rate."  *Florida v. Dunne*, 915 F.2d 542, 545 n.3 (9th Cir. 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  Next, the Court may adjust the lodestar upward or downward using a "multiplier" considering factors adopted by the Ninth Circuit:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the

nature and length of the professional relationship with the client, and (12) awards in similar cases.[3]

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

A. Time expended

In general, the first step in determining the lodestar is to assess whether the number of hours expended was reasonable. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The Court does not necessarily require a "minute-by-minute breakdown" of counsel's hours. *See Beltran v. Spices*, No. 1:18-cv-01676-JLT-SAB, 2023 WL 1467118, at *28 (E.D. Cal. Feb. 2, 2023), *F&R adopted in relevant part*, 2023 WL 5817577 (Sept. 8, 2023); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (the Court is not required to perform an "exhaustive cataloging and review of counsel's hours"). Rather, "plaintiff's counsel can meet his burden—although just barely—by simply listing his hours and identify[ing] the general subject matter of his time expenditures." *Fischer*, 214 F.3d at 1121.

Here, Class Counsels have estimated and provided charts of the hours the Markham Law Firm and United Employees Law Group worked, 346.5 to 356.5 total hours. (Doc. 30-2 at 7-8, 12, 14-29, Doc. 30-3 at 2-3). Specifically, Counsel David R. Markham billed 41.8 hours, Counsel Maggie K. Realin billed 139.9 hours, Counsel Lisa Brevard billed 57.0 hours, Paralegal Leeanna Carcione billed 56.1 hours, and Counsel Walter L. Haines billed 32.30 hours. The Court has performed a detailed review of the records.

a. Clerical Tasks

The Supreme Court has determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). As a result, courts eliminate clerical tasks from lodestar calculations. *See e.g., Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *Marquez v. Harper Sch. Dist.*, 546 F. App'x 659, 660 (9th Cir. 2013) ("[t]he district court was within its discretion" when it declined to award fees for clerical tasks). Such tasks may include: "creating

---

[3] The Ninth Circuit has acknowledged that the Supreme Court doubts that "desirability" is a relevant factor. *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095 n.5 (9th Cir. 2011) (citations omitted).

1    indexes for a binder; filing emails; memoranda, and other correspondence; updating the case

2    calendar with new dates; copying, scanning, and faxing documents; and filing or serving

3    documents." *Moore v. Chase, Inc.*, No. 1:14-c-01178-SKO, 2016 WL 3648949, at *3 (E.D. Cal.

4    Jul. 7, 2016) (citation omitted).

5            i. Downloading, saving, and forwarding documents

6            Courts have declined to award fees for "retrieving electronic court documents or copying"

7    due to the clerical nature of the tasks. *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016,

8    1027 (N.D. Cal. 2012); *Schmidt v. City of Moedesto*, No. 1:17-cv-01411-DAD-MJS, 2018 WL

9    6593362, at *9 (E.D. Cal. Dec. 18, 2018) (declining to award fees for clerical work including

10   downloading, saving, printing documents, emailing documents).  Thus, to the extent the billing

11   records include such tasks, fees for such tasks should not be awarded.  Here, billing records from

12   the Markham Law Firm include entries related to downloading documents, saving documents,

13   and forwarding documents.  (Doc. 30-2 at 25-28).  Based upon the Court's review of the billing

14   records, 4.9 hours from Paralegal Carcione will be deducted from the lodestar.

15           ii. Calendaring

16           Calendaring deadlines are a clerical task that should not be included in a fee award.  *See*

17   *Hill v. Comm'r of Soc. Sec.*, 428 F. Supp. 3d 253, 265 (E.D. Cal. 2019) (observing clerical staff

18   could "easily" complete "calendaring of court dates" and reducing the fee award).  Further,

19   communications such as emails and conferences may be considered clerical tasks when the

20   discussion is about deadlines, filings, and other non-substantive administrative work.  *Henry v.*

21   *Comm'r of SSA*, No 20-cv-00320-TUC-JGZ, 2023 WL 1434332, at *6 (D. Az. Jan. 31, 2023).

22   Based upon the Court's review of the billing records, 1.5 hours from Paralegal Carcione will be

23   deducted from the lodestar for entries related to calendaring deadlines.  (Doc. 30-2 at 25-28).

24           iii. Filing

25           Courts in this district have determined that "filing, transcript, and document organization

26   time was clerical in nature and should have been subsumed in firm overhead." *Nadarajah*, 569

27   F.3d at 921; *see Garcia v. Colvin*, No. 1:11-cv-01965-SKO, 2013 WL 5347494, at *7 (E.D. Cal.

28   Sep. 23, 2013) ("document emailing and e-filing constitutes clerical or secretarial work and

should not be awarded as these activities should be considered overhead costs").  Based upon the Court's review of the billing records, 4.4 hours from Paralegal Carcione will be deducted from the lodestar for entries related to filing documents.  (Doc. 30-2 at 25-29).

b. Duplicative and unnecessary work

A fee applicant "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  The Ninth Circuit has "recognized that the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort."  *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n. 9 (9th Cir. 1989)).  However, counsel should not bill for attending the same meetings, internal communications, and communicating with each other, as such time is unnecessary.  *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010); *Gauchat-Hargis v. Forest River, Inc.*, No. 2:11-cv-02737-KJM-EFB, 2013 WL 4828594, at *3 (E.D. Cal. Sep. 9, 2013) ("many courts have nonetheless reduced fee awards for time spent in 'interoffice conferences' or other internal communications.") (citation omitted).

Here, a significant number of entries reflect duplicative work.  For example, on August 9, 2021, Counsel Markham billed 0.6 hours for a call with Counsel Realin.  (Doc. 30-2 at 14).  That same day, Counsel Realin billed 0.9 hours for a review of the client's documents and that same call with Counsel Markham.  *Id*. at 17.  On February 17, 2022, Counsel Markham billed 0.2 hours for an email exchange with Counsel Realin regarding a "misclass issue," and Counsel Realin billed 0.4 hours for that same exchange.  *Id*. at 14, 17.  On March 10, 2022, Counsel Markham billed 0.3 hours for a call with Counsels Realin and Brevard.  *Id*. at 14.   Counsel Realin billed 0.3 hours and Counsel Brevard billed 0.5 hours for that same call.  *Id*. at 17, 21.  Although the Court declines to identify every example of duplicative and unnecessary work, the amount of time billed for such internal communications suggests overbilling.  *Gauchat-Hargis*, 2013 WL 4828594, at *3; *see Truss Design & Mfg. v. Durossette*, No. 09-91686-D-13, 2012 WL 8123382, at *3 (E.D. Cal. Aug. 23, 2012) (finding a reduction of time appropriate in part due to the amount of time reported for the preparation of internal memos).

1   Given the Court's concerns related to the significant amount of time billed for internal

2   communications, the Court shall exercise its discretion to reduce the hours for Counsels

3   Markham, Realin, and Brevard by 10% for purposes of its lodestar calculation.  *See Moreno v.*

4   *City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (the Court has the authority to impose

5   "a small reduction, no greater than ten percent—a 'haircut'—based on its exercise of discretion");

6   *see also Cosby v. AutoZone, Inc.*, No. 2:08-cv-00505-KJM-DAD, 2016 WL 1626997, at *5 (E.D.

7   Cal. Apr. 25, 2016) (reducing the lodestar calculation by ten percent).  Accordingly, with the

8   aforementioned deductions, the appropriate lodestar should be 311.5 to 321.5 total hours.  The

9   Court finds this amount is reasonable for the tasks performed by the Markham Law Firm and

10   United Employees Law Group in this action.

11   B. Hourly rates

12   The Court must also determine whether the proffered hourly rates are reasonable to

13   calculate the lodestar.  *Dunne*, 915 F.2d at 545 n.3.  The Supreme Court has explained attorney

14   fees are to be calculated with "the prevailing market rates in the relevant community."  *Blum v.*

15   *Stenson*, 456 U.S. 886, 895-96 n.11 (1984).  In general, the "relevant community" for purposes of

16   determining the prevailing market rate is the "forum in which the district court sits."  *Camacho v.*

17   *Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  Thus, when a case is filed in the Eastern

18   District of California, this District "is the appropriate forum to establish the lodestar hourly

19   rate…"  *Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

20   The fee applicant bears the burden to establish that the requested rates are commensurate

21   "with those prevailing in the community for similar services by lawyers of reasonably comparable

22   skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n.11.  The applicants meet this burden

23   by producing "satisfactory evidence—in addition to the attorney's affidavits—that the requested

24   rates are in line with those prevailing in the community for similar services by lawyers of

25   reasonably comparable skill, experience and reputation."  *Id*.; *see Chaudhry v. City of Los*

26   *Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and

27   other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the

28   prevailing market rate").

Here, Class Counsels applied the following hourly rates "adjusted to Eastern District rates": (1) $695 for Counsel Markham, Partner with over 40 years experience; (2) $550 for Counsel Realin, Partner with 14 years experience; (3) $300 for Counsel Brevard, Associate with 5 years experience; (4) $695 for Counsel Haines, Partner with over 40 years experience; and (5) $175 for Paralegal Carcione.  (Doc. 30-2 at 8-9; Doc. 30-3 at 2-3).

The Court has performed a comprehensive survey of fees awarded in the Eastern District and finds Class Counsels' adjusted rates are partly in-line with fees awarded in the Eastern District.  *See e.g., Martinez*, 2023 WL 3569906, at *34 (awarding $525.00 per hour to attorney with twenty years or more of experience, $300.00 per hour for around seven years of experience, and $200.00 for two years or less of experience); *Lusk*, 2023 WL 4134656, at *29 (awarding $525.00 per hour to attorneys with twenty years or more of experience, $450.00 per hour to an attorney with thirteen years of experience, $400.00 per hour to an attorney with eight years of experience, $300.00 per hour for attorneys with approximately five years of experience, and $200.00 per hour for attorneys with less than two years of experience); *Englert v. City of Merced*, No. 1:18-cv-01239-NONE-SAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (finding a rate of $450.00 per hour for a partner with nineteen years of experience, $400.00 per hour for a senior associate attorney with an unspecified amount of years of experience, and a rate of $325.00 per hour for an associate with eight years of experience to be reasonable); *Garcia v. FCA US LLC*, No. 1:16-cv-00730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with approximately thirty years of experience, $300.00 to attorney with fifteen years of experience, $250.00 to attorney with ten years of experience, $225.00 to attorney with five years of experience, and $175.00 to attorney with less than five years of experience); *Schmidt v. City of Modesto*, No. 1:17-cv-01411-DAD-MJS, 2018 WL 6593362, at *6 (E.D. Cal. Dec. 14, 2018) (paralegal rates within the Eastern District range from $75.00 to approximately $150.00 per hour, depending on experience); *Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (approving "hourly rates ranging from $650 through $750" for attorneys with over thirty

1  years of experience"); *Seebach v. BMW of N. Am., LLC*, 2020 WL 4923664, at *3 (E.D. Cal. Aug.

2  21, 2020) (awarding $505 for an attorney "with roughly 20 years of experience" in 2020).

3      With these parameters in mind, the following hourly rates will apply.  The rate for

4  attorneys practicing law for over 40 years or more—including Counsels Markham and Haines—

5  will remain at the proposed rate of $695.  The rate for Counsel Realin who was admitted to the

6  bar in 2009 (Doc. 30-2 at 7-9) will be adjusted to $450.  The rate for Counsel Brevard, an

7  associate with 5 years' experience shall remain at the proposed rate of $300.  The rate for

8  Paralegal Carcione shall be adjusted to $100.  *See Englert*, 2020 WL 2215749, at *13 (rejecting

9  the requested rates of $125 to $150 per hour for the paralegals and reducing them to $75 when the

10 plaintiffs "provided no information on the experience of the paralegals"); *Freshko Produce Servs.*

11 *v. Write on Mktg.*, No. 1:18-cv-01703-DAD-BAM, 2019 WL 37898491, at *3 (E.D. Cal. Aug. 13,

12 2019) (finding the proposed hourly rate of $150 was not reasonable because counsel "fail[ed] to

13 identify the education and experience of [the] paralegal to justify the upper rate of $150," and

14 adjusting the hourly rate to $100).

15     C. Calculation

16     With the time and hourly adjustments set forth above, the adjusted lodestar totals

17 $124,930.90.

| Counsel/Paralegal | Time | Rate | Lodestar |
|---|---|---|---|
| David R. Markham | 37.62 | $695 | $26,145.90 |
| Walter L. Haines | 32.30 | $695 | $22,448.50 |
| Maggie Realin | 125.37 | $450 | $56,416.50 |
| Lisa Brevard | 51.3 | $300 | $15,390.00 |
| Leeanna Carcione | 45.3 | $100 | $4,530.00 |

25     Class Counsels assert the Court should apply a multiplier of 2.74 or 3.03 to the lodestar

26 total.  (Doc. 30-1 at 16).  The Court finds that applying Class Counsels' proposed multiplier

27 (3.03) to the adjusted lodestar hours would result in a fee award well below the one-third

28 percentage-of-recover award requested, and, in fact, would yield an amount closer to the Ninth

1    Circuit's benchmark of 25%.  Thus, the lodestar cross-check does not support Class Counsels'

2    requested fees.

3              9.   Amount of fees to be awarded

4         In light of the factors discussed above, the Court finds a reduction to 25% of the gross

5    settlement amount—a total of $343,750—is appropriate.  This percentage meets the Ninth

6    Circuit's benchmark.  *Bluetooth*, 654 F.3d at 942.  The Court finds this modified amount is fair,

7    reasonable, and adequate as required under Rule 23.  Class Counsel's request for fees is

8    GRANTED in the modified amount of $343,750.

9    II. Litigation Costs

10        "There is no doubt that an attorney who has created a common fund for the benefit of [a]

11   class is entitled to reimbursement of reasonable litigation expenses from that fund."  *Ontiveros*,

12   303 F.R.D. at 375 (citation omitted).  Attorneys may recover reasonable expenses that would

13   typically be billed to paying clients in non-contingency matters.  *Harris v. Marhoefer*, 24 F.3d 16,

14   19 (9th Cir. 1994); *Munoz v. Chipotle Mexican Grill, Inc.*, 238 Cal. App. 4th 291, 311 (2015) ("A

15   prevailing PAGA plaintiff may recover his or her attorney fees and costs as well.").

16        The Settlement Agreement authorizes Class Counsels to recover their actual litigation

17   costs of up to $30,000.  (Doc. 30-1 at 17).  Class Counsels seek litigation expenses in the amount

18   of $21,213.94.  *Id*. at 18.  The itemized costs include mailing and filing fees, legal research fees,

19   and mediation fees.  (Doc. 30-2 at 13).  "Such costs are routinely reimbursed in these types of

20   cases."  *Alvarado v. Nederend*, No. 1:08-cv-01099-OWW-DLB, 2011 WL 1883188, at *10 (E.D.

21   Cal. May 17, 2011) (citation omitted).  Because the costs requested are reasonable and do not

22   exceed the amount authorized, the request for litigation costs in the amount of $21,213.94 will be

23   granted.

24   III. Incentive Award

25        Plaintiffs request an enhancement award in the amount of $6,500.00 each.  (Doc. 30-1 at

26   18).  A representative may "receive a share of class recovery above and beyond [his] individual

27   claim" with a service payment, also known as an "incentive payment."  *China Agritech, Inc. v.

28   Resh*, 138 S. Ct. 1800, 1811 n. 7 (2018); *see Rodriguez*, 563 F.3d at 958 ("Incentive awards are

1   fairly typical in class action cases.") (citations omitted).  However, the decision to approve such

2   an award is a matter within the court's discretion.  *Dunleavy v. Nadler (In re Mego Fin. Corp.*

3   *Sec. Litig.)*, 213 F.3d 454, 463 (9th Cir. 2000).  Incentive awards are meant to compensate

4   representatives for work done on behalf of a class, to make up for financial or reputational risk

5   undertaken in bringing the action, and to recognize their willingness to act as a private attorney

6   general.  *Rodriguez*, 563 F.3d 948 at 958-59.

7        1.   Awarding an Incentive Award

8        The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all

9   incentive awards."  *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013).  In

10  evaluating a request for an incentive payment to a representative, the Court must consider "'the

11  actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

12  benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the

13  litigation,' and any financial or reputational risks the plaintiff faced."  *Named Plaintiffs &*

14  *Settlement Class Members v. Feldman (In re Apple Inc. Device Performance Litig.)*, 50 F.4th 769,

15  786 (9th Cir. 2022) (quoting *Roes*, 944 F.3d at 1057).

16      A. Time Expended

17       The Eastern District has awarded service payments for "'substantial efforts taken as a

18  class representative' when the plaintiff has undertaken at least 30 to 40 hours of work."  *Greer v.*

19  *Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2020 WL 5535399, at *4 (E.D. Cal.

20  Sep. 15, 2020).  Here, Plaintiffs claim they searched for and provided documents to counsel,

21  reviewed documents and pleadings, communicated with counsel through conference calls, emails,

22  and text messages, and were on standby during a full-day mediation session.  (Doc. 30-5 at ¶¶ 9-

23  11; Doc. 30-6 at ¶¶ 9-11).  Plaintiff Diaz attests he devoted approximately 50 hours on the

24  prosecution of this action, and Plaintiff O'Guinn declares he devoted approximately 40 hours.

25  (Doc. 30-5 at ¶ 12; Doc. 30-6 at ¶ 12).  These amounts support approval of the incentive awards.

26      B. Action taken to benefit the class

27       Plaintiffs Diaz and O'Guinn assert that on April 19, 2022, through counsel of record, they

28  brought a class and representative action lawsuit against Defendant on behalf of other PTS

employees.  (Docs. 30-5 at ¶ 4; 30-6 at ¶ 4).  Plaintiffs claim they decided to become named plaintiffs in a class action to represent other employees who were subject to Defendant's vacation policy.  (Docs. 30-5 at ¶¶ 6-7; 30-6 at ¶¶ 6-7).  Plaintiffs note they spent hours searching for documents, scanning and emailing them to their attorneys and reviewing and answering questions about documents identified by the attorneys.  (Docs. 30-5 at ¶¶ 9, 11-12; 30-6 at ¶¶ 9, 11-12).  Plaintiffs state they had to spend time on conference calls, through email and text messages answering their attorneys' questions about this case.  (Docs. 30-5 at ¶ 9; 30-6 at ¶ 9).   Further, Plaintiffs represent they had to be on telephonic standby for a full-day mediation session to answer their attorneys' questions pertaining to their claims.  (Docs. 30-5 at ¶ 10; 30-6 at ¶ 10).  Plaintiffs' actions undoubtedly benefit class members who will receive an average payment of $115.18.  "Further, Plaintiffs signed a general release and waiver of claims of every nature and description, which is a broader release than unnamed class members."  (Doc. 30-1 at 19).  The Court takes this sacrifice into account when scrutinizing an incentive award.  *See Ontiveros*, 303 F.R.D. at 375 (citing *Rodriguez*, 563 F.3d at 958-59).  Accordingly, the actions taken on behalf of the class support approval of the incentive awards.

C. Workplace retaliation

The Court may consider whether the named plaintiff has a reasonable fear of workplace retaliation in evaluating a request for a service payment.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th.Cir. 2003).  However, when a class representative is a former employee, retaliation by a defendant is not ordinarily applicable.  *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 280 (E.D. Cal. 2014).

Plaintiff Diaz asserts he took a risk by agreeing to become a named plaintiff in this action.  (Doc. 30-5 at ¶ 14).  Plaintiff Diaz states he was nervous to bring a lawsuit against Defendant, especially considering he had been employed at Defendant for almost 30 years.  *Id*. at ¶ 14.  Plaintiff Diaz asserts he worries that "this lawsuit could impact future opportunities because now anyone who performs a background check on me can see that I sued my employer."  *Id*.  As Plaintiff Diaz is a current employee of Defendant, he had a reasonable fear of workplace retaliation and thus this factor supports providing Plaintiff Diaz an incentive award.  On the other

1    hand, Plaintiff O'Guinn, as a former employee (Doc. 30-6 at ¶ 3), cannot suffer workplace

2    retaliation from Defendant.  Thus, this factor does not support a service payment as to Plaintiff

3    O'Guinn.

4      D. Financial risk

5       Plaintiffs assert they undertook a financial risk in pursuing this class action.  Specifically,

6    Plaintiffs claim it was hard to participate in the case because they worked full-time and part-time

7    up to 40 hours a week.  (Docs. 30-5 at ¶ 15; 30-6 at ¶ 15).  Plaintiffs also feared they could have

8    been held liable for Defendants' legal fees.  (Docs. 30-5 at ¶ 14; 30-6 at ¶ 14).  The Court

9    recognizes Plaintiffs may have taken some time away from their work to support their case.

10   Moreover, courts in the Ninth Circuit have repeatedly acknowledged plaintiffs undertake a

11   financial risk when they serve as a class representative.  *Vasquez v. Coast Valley Roofing, Inc.*,

12   266 F.R.D. 482, 491 (E.D. Cal. 2010); *Wilson v. Metals USA, Inc.*, No. 12-cv-00568-KJM-DB,

13   2021 WL 516585, at *9 (E.D. Cal. Feb. 11, 2021) ("by initiating this case, they assumed the risk

14   of a judgment against them and personal liability for an award of costs to be defendant in the

15   event of an adverse outcome" and finding the identified financial risk "weighs in favor of

16   granting an incentive award").  Accordingly, this factor supports approval of the incentive

17   awards.

18     E. Willingness to act as private attorney general

19      Incentive payments may recognize a named plaintiff's "willingness to act as a private

20   attorney general."  *Rodriguez*, 563 F.3d at 958-59.  Here, Plaintiffs acted as a private attorney

21   general, which will result in payments to the LWDA and aggrieved employees under PAGA.

22   Accordingly, this factor supports approval of the incentive awards.

23     2.  Reasonableness of Plaintiffs' request

24      Considering the factors set forth above—including the actions taken by Plaintiffs on

25   behalf of the class, the time expended, benefit received, risks undertaken, and claims waived—an

26   incentive award is appropriate.  In determining the amount to be awarded, the Court may consider

27   the actions undertaken by the class representative, the fairness of the hourly rate, and how large

28   the incentive award is compared to the average award class members expect to receive.

1    *Ontiveros*, 303 F.R.D. at 366 (evaluating the hourly rate the named plaintiff would receive to

2    determine whether the incentive award was appropriate); *Alvarado*, 2011 WL 1883188, at *10-11

3    (considering the time and financial risk undertaken by the plaintiff).  Generally, an incentive

4    payment of $5,000 for the class representative "is presumptively reasonable" in the Ninth Circuit.

5    *Richardson v. THD AT-Home Servs.*, No. 14-cv-00273-BAM, 2016 WL 1366952, at *13 (E.D.

6    Cal. Apr. 6, 2016); *see Gonzalez v. NCI Group, Inc.*, No. 18-cv-00948-AWI-SKO, 2023 WL

7    373252, at *9 (E.D. Cal. Jan. 24, 2023) ("Courts routinely find rewards in the amount of $5,000

8    to be reasonable").

9        A. Actions of the class representatives

10        As stated above, Plaintiffs assert they spent hours searching for documents, scanning and

11   emailing them to their attorneys, and reviewing documents their attorneys asked them to review

12   and answering questions.  Also, the Court noted that Plaintiffs undertook a financial risk in the

13   pursuit of litigation, and Plaintiff Diaz undertook the risk of workplace retaliation.  The Court

14   finds Plaintiffs' actions are comparable to plaintiffs granted incentive awards in other district

15   court cases.  *See Bond v. Ferguson Enters.*, No. 1:09-cv-01662 OWN MJS, 2011 WL 2648879, at

16   *15 (E.D. Cal. Jun. 30, 2011); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 13-cv-

17   00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017); *Perez v. CVS Health

18   Corp.*, No. 19-cv-00449-DAD-BAM, 2021 WL 2402950, at *13 (E.D. Cal. Jun. 11, 2021); *Cf.

19   Wade v. Minatta Transp. Co.*, No. C10-02786 BZ, 2012 U.S. Dist. LEXIS 12057, at *3 (N.D.

20   Cal. Feb. 1, 2012) (Plaintiffs did not demonstrate "that as class representatives they spent

21   substantially more time and effort on the lawsuit than if they were suing only on their behalf. In

22   fact, neither representative provided the court with an estimate of the hours he spent on this

23   litigation.").  Accordingly, this factor supports the conclusion that the incentive awards requested

24   by Plaintiffs are fair and reasonable.

25        B. Fairness of the hourly rate

26        Generally, courts have considered the hourly rate of compensation for a class

27   representative.  *See, e.g., Ontiveros*, 303 F.R.D. at 366; *Moss v. USF Reddaway, Inc.*, No. 15-cv-

28   01541 JAK (FFMx), 2018 WL 5099291, at *11 (C.D. Cal. Feb. 15, 2018); *Pappas v. Naked Juice*

1    *Co of Glendora, Inc.*, No. 11-cv-08276 JAK (PLAx), 2014 WL 12382279, at *14-15 (C.D. Cal.

2    Jan. 2, 2014).  Courts have declined to issue incentive awards where the hourly rate for the tasks

3    completed in the action was excessive or unreasonable.  *Id.*

4          For example, another judge of this Court criticized a requested award because the award

5    would have compensated the class representative "at a rate of $73.80 per hour."  *Ontiveros*, 303

6    F.R.D. at 366.  In evaluating the reasonableness of the award, the Court noted Ontiveros was paid

7    $15 per hour while employed by the defendant.  *Id.* at 366, n. 3.  The Court explained that

8    "[i]ncentive awards should be sufficient to compensate class representatives to make up for

9    financial risk…for example, for the time they could have spent at their jobs."  *Id.* at 366 (citing

10   *Rodriguez*, 563 F.3d at 958-59).  The Court found an award of "$50 per hour fairly compensates

11   the named plaintiff for his time," and rounded the $13,500 total up to $15,000 to "incorporate[] an

12   extra incentive to participate in litigation."  *Id.*

13         Here, Plaintiffs have not provided any information regarding the pay they received as

14   employees of Defendant.  *See generally* (Docs. 30-5, 30-6).  The requested incentive award to

15   Plaintiff Diaz—based upon the reported 50 hours (Doc. 30-5 at ¶ 12) that he spent on the

16   matter—would result in an hourly rate of $130.  The requested incentive award to Plaintiff

17   O'Guinn—based upon the reported 40 hours (Doc. 30-6 at ¶ 12) that he spent on the matter—

18   would result in an hourly rate of $162.50.  These hourly rates appear excessive.  *See Ontiveros*,

19   303 F.R.D. at 366; *see also Pappas*, 2014 WL 12382279, at *14-15.  If the Court were to adopt

20   the $50 hourly rate approved in *Ontiveros*, Plaintiffs Diaz and O'Guinn's awards would be

21   reduced to $2,500 and $2,000.  Thus, this factor does not support incentive awards in the amounts

22   requested.

23         C. Comparison of the awards to those of the Class Members

24         The Ninth Circuit has indicated that a court may consider the "proportion of the

25   [representative] payment[s] relative to the settlement amount, and the size of each payment."  *In*

26   *re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 947; *see Emmons*, 2017 WL 749018, at

27   *9 (awarding class representative payments of $8,000, 14.5 times the average award and 0.3% of

28   the gross settlement of $2.35 million); *Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018

1  WL 1258194, at *3, 7-8 (E.D. Cal. 27, 2017) (awarding representative payment of $10,000,

2  which was 25 times the average award and 0.125% of the gross settlement).

3      The requested incentive awards for Plaintiffs Diaz and O'Guinn are 0.0094 % of the gross

4  settlement amount.  Plaintiffs' request for incentive awards that amount to less than one percent

5  of the gross settlement amount is reasonable.  *Cf., Sandoval v. Tharaldson Emple Mgmt.*, No.

6  EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *9-10 (C.D. Cal. Jun. 15, 2010) (collecting

7  cases and concluding that plaintiff's request for an incentive award representing one percent of

8  the settlement fund was excessive).  In addition, the requested awards are over nine times the

9  highest estimated payment of $688.72, and over fifty-six times the expected average award of

10  $115.18.  (Doc. 31-3 at 4).  The incentive awards of $6,500 are several times higher than the

11  average recovery.  The significant disparity between the requested awards and the average

12  recovery does not support the amount requested and instead favors a reduction.  *See e.g.,*

13  *Ontiveros*, 303 F.R.D. at 366 (approving $15,000 incentive payment where average recovery was

14  $3,700); *Taylor v. FedEx Freight, Inc.*, No. 13-cv-01137-DAD-BAM, 2016 WL 6038949, at *8

15  (E.D. Cal. Oct. 13, 2016) (approving a $10,000 incentive award where average awards were

16  estimated to be $2,616); *Clayton v. Knight Transp.*, No. 11-cv-00735-SAB, 2014 WL 1154098, at

17  *2, 6 (E.D. Cal. Nov. 3, 2015) (approving $3,500 incentive payments where average class

18  recovery was approximately $150); *Davis v. Brown Shoe Co.*, No. 13-cv-01211-LJO-BAM, 2015

19  WL 6697929, at *12 (E.D. Cal. Nov. 3, 2015) (approving $7,000 incentive payments where

20  average class recovery was approximately $400).

21      3.  Amount to be Awarded

22      Because the factors discussed above support an incentive award—and the actions of

23  Plaintiffs clearly benefited class members—a service payment is appropriate.  As noted above,

24  the application of a $50 hourly rate to the 50 hours reported by Plaintiff Diaz and the 40 hours

25  reported by Plaintiff O'Guinn fall below Plaintiffs' requested awards.  Therefore, the Court finds

26  a service payment of $5,000 each for Plaintiffs is appropriate in light of the time expended and

27  actions taken on behalf of the class.  *See Flores v. ADT LLC*, No. 16-cv-00029-AWI-JLT, 2018

28  WL 6981043, at *2-3 (E.D. Cal. Mar. 19, 2018).

37

**<u>Conclusion and Order</u>**

Based upon the foregoing, the Court finds the class and representative action settlement is fair, adequate, and reasonable.  Accordingly, IT IS HEREBY ORDERED:

1.  This Final Approval Order and Judgment adopts and incorporates by reference as though set forth in full all of the terms and conditions of the Joint Stipulation of Class and Representative Action Settlement and Release of Claims ("Settlement Agreement") together with the definitions used in the Settlement Agreement. All capitalized terms used in this Final Approval Order and Judgment are defined and have the same meaning as set forth in the Settlement Agreement, unless otherwise specifically and separately defined herein;

2.  This Court has jurisdiction over the claims of the members of the Class asserted in this proceeding, personal jurisdiction over the Plaintiffs and Defendant, and the members of the Class, as defined in the Settlement Agreement;

3.  This Court previously conditionally certified the Class for settlement purposes. The Court hereby grants final certification approval for settlement purposes to the Class, defined as:

    All current and former Part–Time Supervisors, including employees with similar job titles and/or duties, who worked for Defendant within the State of California during the Settlement Class Period, defined as from April 19, 2018 and through May 24, 2023, and who at least once during the Settlement Class Period took paid vacation under UPS's vacation policy, and whose average straight-time daily paid hours exceeded 5.5 hours per day for the prior Vacation Year, but whose vacation pay was limited to 5.5 hours per day, or 27.5 hours per week of vacation in the Vacation Year.

4.  Notice of Settlement given to the class fully and accurately informed Class Members of all material elements of the proposed settlement and of their opportunity to exclude themselves from, object to, or comment on the settlement, and to appear at the final approval hearing. The notice was reasonable and the best notice practicable under the circumstances. Accordingly, this Court finds that the notice program described in the Settlement and completed by the Settlement Administrator complied fully with the requirements of due process, the Federal Rules of Civil Procedure, and all other applicable laws;

5.  The Settlement Agreement is not an admission by Defendant or by any other Released Party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendant or any other Released Party. Neither this Order, the Settlement Agreement, nor any document referred to herein, nor any action taken to carry out the Settlement Agreement, may be construed as, or may be used as, an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against Defendants or any of the Released Parties;

6.  Neither Defendant nor any related persons or entities shall have any further liability for costs, expenses, interest, attorneys' fees, or for any other charge, expense, or liability, except as provided in the Settlement Agreement;

7.  All Plaintiffs, Class Members, and the California Labor and Workforce Development Agency ("LWDA") are bound by this Final Approval Order and Judgment and by the terms of the parties' Settlement Agreement, including the releases provided for in the Settlement Agreement and this Final Approval Order and Judgment. As of the Effective Date of the Settlement, by operation of the entry of this Final Approval Order and Judgment, each of the Plaintiffs, Class Members, and the LWDA shall be deemed to have fully released, waived, relinquished, and discharged, to the fullest extent permitted by law, all Released Claims that he or she may have against the Released Parties. As of the Effective Date of the Settlement, Plaintiffs, Class Members and the LWDA, and all persons and entities acting on behalf of, through, or in concert with them, shall be and hereby are permanently enjoined and restrained from and against filing, initiating, pursuing or continuing to prosecute any actions, claims, or complaints with respect to any of the Released Claims, as more fully set forth in the Settlement Agreement;

8.  Class Members were given a full opportunity to participate in the Final Approval Hearing, and all Class Members and other persons wishing to be heard have been heard. Accordingly, the Court determines that all Class Members who did not timely and properly opt out of the settlement are bound by this Order;

9.  The Court has considered all relevant factors for determining the fairness of the settlement and has concluded that all such factors weigh in favor of granting final approval. In particular, the Court finds that the settlement was reached following meaningful discovery and investigation conducted by Plaintiffs' counsel; that the settlement is the result of serious, informed, adversarial, and arm's-length negotiations between the parties; that it was reached with the assistance of an experienced neutral, and that the terms of the settlement are in all respects fair, adequate, and reasonable;

10. In so finding, the Court has considered all evidence presented, including evidence regarding the strength of Plaintiffs' case; the risk, expense, and complexity of the claims presented; the likely duration of further litigation; the amount offered in settlement; the extent of investigation and discovery completed; and the experience and views of Plaintiffs' counsel. The Court has also considered the absence of objection to the settlement;

11. The Court hereby finds the Settlement Payments to Class Members under the terms of the Settlement to be fair and reasonable in light of all the circumstances. The Court, therefore, orders the calculations and payments to be made and administered in accordance with the terms of the Settlement Agreement;

12. The Court finds and determines that the payment of civil penalties pursuant to the California Labor Code Private Attorneys General Act ("PAGA") as specified in the Settlement Agreement is fair and reasonable. The Court, therefore, orders the payments of those penalties be made to the LWDA and Class Members in accordance with the terms of the Settlement Agreement;

13. The Court finds that the services provided by the Settlement Administrator were for the benefit of the Class, and the cost of $38,400 is fair, reasonable, and appropriate for reimbursement, and approves payment of that amount to Simpluris, Inc. for administration fees, which include all costs and fees incurred to date, as well as estimated costs and fees involved in completing the administration of the Settlement;

14. The Court confirms The Markham Law Firm and United Employees Law Group as Class Counsels in this action. The Court finds that Class Counsels have the sufficient experience, knowledge, and skill to promote and safeguard the interests of the Class. The Court therefore finds that Plaintiffs' counsels satisfy the professional and ethical obligations of Class Counsels;

15. The Court further approves an award of attorneys' fees of $343,750.00. The Court finds that this amount is supported by both the application of the percentage fee and the lodestar-plus-multiplier methods for awarding reasonable attorneys' fees;

16. In the course of this litigation, Class Counsels incurred $21,213.94 in costs in the form of court filing fees, mediation fees, deposition transcripts, document copying fees, legal research charges, deposition travel expenses, and delivery charges. The Court approves the reimbursement of Class Counsels' costs in the amount of $21,213.94, pursuant to the terms of the Settlement Agreement;

17. The Court finds that Plaintiffs Oscar Diaz and Jace O'Guinn are suitable representatives for the Settlement Class and are hereby appointed the Class Representatives. The Court finds that Class Representatives' investment and commitment to the litigation and its outcome ensured adequate and zealous advocacy for the Settlement Class, and their interests are aligned with those of the Settlement Class;

18. The Court finds Class Representatives' Incentive Awards in the amount of $5,000 to each of the Plaintiffs are fair and reasonable compensation based upon the evidence presented regarding the services provided and risks incurred by Plaintiffs in assisting Class Counsel;

19. The Court finds that all required notices were timely and properly given to the requisite government agencies and officials pursuant to the Class Action Fairness Act and PAGA, including to the LWDA;

20. Without affecting the finality of this Final Approval Order and Judgment, the Court reserves continuing and exclusive jurisdiction over the parties to the Settlement, including Plaintiffs, Defendant, Class Members, and the LWDA, to administer, supervise, construe, and enforce the Settlement in accordance with its terms; and

21. The Clerk of Court is DIRECTED to enter judgment accordingly and to close this case.

IT IS SO ORDERED.

Dated:   __December 12, 2023__          _____

UNITED STATES MAGISTRATE JUDGE